## SPALDING v. BROWN.

### [59 Pac. 185.]

CHATTEL MORTGAGE OR CONDITIONAL SALE.—In determining whether a given transaction is a chattel mortgage or a conditional sale one of the most important elements is the existence or not of a debt between the parties, and the absence of the obligation is a strong circumstance indicating a conditional sale.

EVIDENCE OF CONDITIONAL SALE.—An application by an insolvent debtor for a loan, to be secured on a stock of bicycles, was refused; but the negotiations resulted in his giving an absolute bill of sale on the stock, whereupon the vendee gave the debtor an option to purchase the stock within a limited time. The consideration for the bill of sale was paid, and the stock delivered to, and possession retained by, the vendee, except a few wheels, which he intrusted to the debtor to sell on commission. The debtor surrendered the option before its expiration, for a valuable consideration, and the vendee sold the stock at retail, realizing a large profit. *Held*, that the transaction was a conditional sale, and not a mortgage: *Stephens* v. *Allen*, 11 Or. 188, distinguished.

From Multnomah : LOYAL B. STEARNS, Judge.

Bill by A. G. Spalding & Brothers, a corporation, against Sherman D. Brown and another. From a decree for defendants, plaintiff appeals.        AFFIRMED.

For appellant there was a brief over the names of *Arthur C. Emmons* and *Lionel R. Webster*, with an oral argument by *Mr. Emmons*.

For respondent there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Joseph N. Teal*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The complaint in this case is in the nature of a bill of discovery, and proceeds upon the theory that the defendant Brown mortgaged to the defendant Selling a lot of bicycles, two hundred and eighty-five in number ; that Selling has disposed of more than sufficient thereof to reimburse him for the money loaned ; and plaintiff's purpose is to require Selling to account to it (a creditor of Brown) for whatever money or property remains after the satisfaction of his alleged mortgage.    Paragraph 20 comprises all the allegations of fraud or intent on the part of Brown and Selling to subvert the rights of the creditors of Brown, and is as follows : ''That, notwithstanding the fact that said bicycles were so pledged to said Selling by said Brown as security for money borrowed by the latter from the former, and were delivered and received as such pledge, and not otherwise, and although said Selling so at one time claimed and asserted the fact to be, and pretended and claimed that the amount of money so loaned was eight thousand dollars ($8,000), as aforesaid, which, as plaintiff believes, and therefore al-

leges the fact to be, is greatly in excess of the amount actually loaned by him to said Brown as aforesaid, yet now said Selling, in fraud of the rights and interests of this plaintiff, as well as the other creditors of said Brown, falsely and fraudulently gives forth, asserts, and pretends that he purchased said bicycles from said Brown, and became, was, and is the absolute owner thereof.'' The answer of the defendant Selling sets up that on or about April 3, 1896, he purchased the bicycles in question of Brown, in good faith, for the consideration of $8,000, without notice or knowledge of any attempt on the part of Brown to delay, hinder, or defraud the plaintiff or any one.

The facts out of which the controversy arose are substantially as follows : Prior to April 3, 1896, plaintiff sold to the defendant Brown a number of bicycles, whereby he became indebted to it in the sum of $6,406.82, and on April 14, 1896, began an action against him in the Circuit Court of the State of Oregon, for Multnomah County, to recover said sum, and caused a writ of attachment to be issued and served upon the defendant Selling, for the purpose of attaching any property he might have belonging to Brown. Selling answered that he had no such property in his hands. No further proceedings were had in the action under the garnishment, but on April 25, 1896, the plaintiff obtained judgment against Brown in the amount prayed for. Brown was further indebted to the Ariel Cycle Manufacturing Company in the sum of about $13,500, which also arose from the purchase of bicycles, giving his acceptances in each instance for the price thereof. Being thus involved, Brown attempted, through D. S. Stearns, a broker, to negotiate a loan from Selling for $8,000, and tendered as security therefor the bicycles in question, together with some stock in a real estate association; but Selling refused to treat with Brown

upon that basis. The negotiations, however, resulted in an arrangement whereby Brown executed and delivered to Selling an instrument purporting to be an ordinary bill of sale of the bicycles, and reciting a consideration of $8,000, which bears date April 3, 1896. Immediately or within half an hour thereafter, Selling executed and delivered to Brown an instrument of writing, of which the following is a copy: "Whereas, Sherman D. Brown has this day sold and delivered to me 155 Crown bicycles, 72 Ariel bicycles, and 58 Spalding bicycles, receipt of which I hereby acknowledge; and, whereas, I have agreed to sell said bicycles to the said Sherman D. Brown, and to him only, for a period of sixty days from the date hereof. Now, therefore, in consideration of one dollar to me in hand paid, and receipt of which is hereby acknowledged, I do hereby covenant to and with the said Sherman D. Brown that for a period of sixty days from the date hereof I will sell said bicycles only to said Sherman D. Brown, or upon his order in writing, and that I will sell to the said Sherman D. Brown at any time within sixty days from the date hereof all or any part of said bicycles for the sum of $35 each; this agreement to be construed only as an option granted to the said Sherman D. Brown, for a valuable consideration, to purchase said bicycles, or any part thereof, at the price above named, at any time within the period above limited; and, at the expiration of said sixty days, should such option not be exercised within such time, said option shall expire and be thereafter inoperative and void as to so many of such bicycles as shall not have been sold by me pursuant to the terms of this agreement within the period above limited." The bicycles were actually delivered to Selling, either on the third or the morning of the fourth of April, for which on the latter day he paid Brown the sum of $8,000, by check on the First National Bank of Portland.

On May 6, 1896, Brown surrendered to Selling, by written indorsement, the instrument above set out, and in consideration thereof Selling paid him $1,000.

Thereafter, Selling proceeded to sell the bicycles at retail upon his own account, and has sold all but five of them, and realized therefrom the gross sum of $13,192.40. In accomplishing this result, however, he devoted his own time for a period of five months, and incurred considerable expense in disposing of the same. Selling, Minor, and Stearns, the only persons except Brown having personal knowledge of the transaction, all testified that the purpose of the bill of sale was to evidence an absolute sale and transfer of the property by Brown to Selling, that a loan was not in contemplation, and that Selling absolutely refused to treat with Brown therefor; and to this view of the transaction there is no countervailing testimony. There is testimony in the record that subsequent to the time of the completion of the transaction touching the transfer of the bicycles to Selling, and before he took the surrender of the alleged option, he agreed with the Spalding and Ariel people, through their agents and attorneys, that he would transfer to them all the interest he had acquired and then held and possessed in the property, upon the condition that they would refund to him the $8,000 he had paid to Brown, with interest, expenses, and a reasonable sum for his trouble in attending to the matter. Mr. Selling admits that such a proposition was made to him, and that he had the matter under consideration, but states, in substance, that the negotiations never proceeded so far as to culminate in an agreement to that effect upon his part. He stated at the time that he had a bill of sale of the wheels, but did not disclose the fact that he had given Brown the option referred to. It was revealed in the course of the negotiations, however, that he let Brown have some twenty or more of

the bicycles to sell on commission, and that he was to permit him to take said bicycles, in lots of twenty, from time to time, as he might be able to dispose of the same, upon like conditions. There is also testimony tending to show that some four weeks later, and after Selling secured the surrender of the option and had begun to advertise the wheels for sale, he again agreed to the transfer of the property to the agents of plaintiff and the Ariel Company upon the conditions previously stated, but upon a cash basis; that, in pursuance thereof, plaintiff's agent and attorney telegraphed for authority, and received instructions to "purchase Selling's interest for joint account, and draw proportionately. Don't exceed nine thousand." When Selling was approached the next day (May 10, 1896), and the instructions made known to him, he refused to abide by his agreement or to treat further with the parties touching the matter. He, however, flatly denies that he ever acceded to such an arrangement. This concluded all negotiations touching the affair, whereupon this suit was instituted.

The plaintiff makes two contentions: (1) That the bill of sale, though absolute in form, when construed in connection with the option and the understanding of the parties to the transaction, was in reality a chattel mortgage, intended primarily as security for the money then paid or advanced by Selling to Brown; and (2) that, if the transaction be construed as a sale, then that it was attended with such suspicious circumstances touching its fairness as to render it inequitable and unjust towards Brown's creditors, and hence that it ought not to be permitted to stand, except as security for the amount expended in the purchase. The defendant contends that the transaction is indicative of an absolute sale, with an option to repurchase at a stipulated price, and that, in the light of the agreements of the parties and the attendant

circumstances, it cannot be construed to constitute a mortgage only; and, furthermore, it is void of any fraud intended by Selling, or with which he may be charged, and therefore the transaction should be allowed to stand as a sale, and not as security only for the money advanced.

It may be premised that, in cases of doubt whether the transaction amounts to a conditional sale or a mortgage, courts will incline to the support of it as a mortgage; and this upon the ground that the equities of all concerned may be more readily and exactly adjusted. However, if the transaction amounts in fact and in law to a conditional sale, the courts will not hesitate to enforce it. It is not their province to make contracts for parties, but they can only enforce such as have been made, when called upon to give them effect. There is perhaps no conclusive single test by which it may be determined that any transaction may be denominated or legally characterized as a mortgage, as distinguished from a conditional sale. The primary inquiry may be said to be the intention of the parties, and this may be determined, not alone by the instrument which forms the basis of the transaction, but by the attendant and surrounding circumstances, and the conditions under which it was delivered and designed to become effective. If it was the purpose of the parties to secure a previously existing debt, or one then created, or even to arise in the future, the irresistible inference would be that the transaction culminated in a mortgage; but the absence of any debt, either existing, created, or contemplated, or of any obligation, expressed or implied, to pay or perform any act or duty, is very persuasive evidence, if not always a conclusive test, that the instrument is not a mortgage. In this connection, other elements may be considered as indicative in some measure. of the real character of the understanding,— such as the circumstance that the negotiations originated

in an endeavor to obtain a loan, the inadequacy of the price, and the possession of the property meanwhile. In view of these elemental conditions, and in the light of attendant circumstances and surroundings, we may confidently determine the real character of the transaction entered into between Selling and Brown. There was no obligation by Brown to pay Selling any sum of money whatever. He had an option, which he could exercise if he so desired, to pay at the rate of $35 per wheel at any time within sixty days, and thereby become entitled again to the property; but there was no engagement of any nature entered into upon his part which Selling could enforce. There was, then, no relation of debtor and creditor created between these parties, and thus is a very material, if not vital, element of a mortgage wanting. In the inquiry touching whether a transaction is a mortgage or a conditional sale, this doctrine may be said to be well established by the authorities : If the relation of debtor and creditor exists, and a debt subsists between the parties, it is a mortgage. If, however, the vendor has the privilege of paying a sum of money, not measured merely by the consideration paid and accruing interest thereon, if he pleases, or at his option, by a given time, and thereby entitles himself to a retransfer or reconveyance, then it must be regarded as a conditional sale : *Slowey* v. *Mc-Murray*, 27 Mo. 113 (72 Am. Dec. 251) ; *Wallace* v. *Johnstone*, 129 U. S. 58 (9 Sup. Ct. 243); *Conway's Ex'rs* v. *Alexander*, 11 U. S. (7 Cranch) 218 ; *Henley* v. *Hotaling*, 41 Cal. 22 ; *Slutz* v. *Desenberg*, 28 Ohio. St. 371 ; *Paige* v. *Villhac*, 42 Cal. 75 ; *Glover* v. *Payn*, 19 Wend. 518 ; *Smith* v. *Crosby*, 47 Wis. 160 (2 N. W. 104); *Hays* v. *Carr*, 83 Ind. 275 ; 1 Beach, Mod. Eq. Jur. § 414 ; 15 Am. & Eng. Enc. Law (1 ed.), 785.

We are not unmindful that there are cases where the creditor or party furnishing the money may agree to look

to the property solely for reimbursement, and yet remain liable to account for any surplus that may remain over and above the sum satisfied, which fact would place the transaction within the category of a mortgage : *Cook* v. *Johnson*, 165 Mass. 245 (43 N. E. 96); *Campbell* v. *Dearborn*, 109 Mass. 130 (12 Am. Rep. 671); *Stephens* v. *Allen*, 11 Or. 188 (3 Pac. 168). But this case is not one of them, for there was no such understanding or agreement on the part of Selling. Brown had an option, and Selling was not obliged to account in any manner, except to redeliver the wheels when Brown declared his option, and paid the price agreed upon, within the time stated. True, the negotiations originated in an endeavor upon the part of Brown to obtain a loan. But this is susceptible of explanation. It is said in *Douglas* v. *Moody*, 80 Ala. 61 : ''The fact that the negotiations between the parties originated in an application for a loan of money is regarded as one of the principal *indicia* of a mortgage; but, when it is shown that the application for a loan was repeatedly declined, and, after the negotiations were broken off, the defendant's proposal of a conditional sale was accepted, the weight of that circumstance is destroyed.'' So it is here. Selling refused to treat with Brown upon the basis of a loan, clearly intending to characterize the transaction as anything else but a mortgage ; and, upon the face of the two instruments executed (and which must be construed as one), the mortgage feature is wholly eliminated, and it stands as a completed sale, with an option to repurchase. To this purpose, also, is the evidence of all the witnesses to the specific transaction. Apparently, there was an inadequacy of price paid, or at least Selling derived large profits from his sale of the wheels on his individual account in the retail market. But there is a feature in connection with the attempted negotiations of plaintiffs for a purchase of Selling's interest in the prop-

erty which would indicate that they cost Selling about all they were worth in the wholesale market at the time. By the instructions from the houses which manufactured the Spalding and Ariel wheels, their attorneys were not to exceed $9,000 in the purchase of his interest. In one light, these instructions may be construed as indicating a notion that Selling was not entitled to more, and hence they would not consent to pay him any larger sum. But it is legitimately susceptible of the other suggestion — that that amount was all they could afford to pay for the wheels, in consideration of their market value, which was probably the case. This is just what the wheels eventually cost Selling. True, he paid $8,000 only in the first instance, but he gave back the option to repurchase for a period of time covering the better part of the season for a sale of the wheels. The option was of value, and Selling purchased it so that he might have an earlier benefit of the market, to reimburse himself in his original purchase. There is no dispute about the possession. That passed to Selling at once, and he continued to retain it, except as to a small number of the wheels, which he intrusted to Brown to sell on commission. Upon the whole, it is not possible to sustain the transaction as a mortgage, and to adjust the rights of the parties upon that idea or basis. Selling's subsequent treatment of the affair, in the attempt of the creditors of Brown to deal with him, was not inconsistent with the idea adopted at the beginning, although he was not entirely frank in disclosing the whole transaction.

Were the circumstances of a nature so suspicious that the sale should be held valid only for the reimbursement of Selling for his outlay? This inquiry is predicated upon the idea that Selling had such notice of Brown's financial embarrassment, either constructive or actual, as to make him, in a sense, a party to Brown's attempt to defraud

his creditors. The complaint contains no allegations to that effect, nor does it charge Selling with any purposed fraud upon the creditors of Brown in entering into the arrangement; and the only intimation contained therein of any attempted fraud upon his part consists in the alleged pretense, subsequently made, that the transaction constituted a sale of the wheels to him, instead of a mortgage. But, waiving this feature, the only evidence we have upon this subject is that of Mr. Selling, who states that Brown told him he had given his acceptances for the wheels, that some of them were about falling due, and that he was desirous of obtaining the money to meet the demands. That he was getting the wheels at a low figure ought to be considered as a circumstance in connection with the contention, but we cannot say that there is enough in the record to charge Selling with the fraud of which Brown was guilty, and to require him to account to Brown's creditors for the profits realized upon his purchase. The decree of the court below will therefore be affirmed, and it is so ordered.      AFFIRMED.