Decided 30 July, 1900.

## LIEUALLEN v. MOSGROVE.

[61 Pac. 1022.]

AMENDING PLEADINGS AFTER REVERSAL.

1. Pleadings may be amended at any time before trial, even to the extent of adding new causes of action or defense if connected with the subject-matter of the controversy, without regard to previous appeals or reversals, and the action of the trial court on applications to amend will not be reviewed except for a plain abuse of discretion resulting in a material injury to some substantial right of the appellant.

DAMAGES FOR NEGLIGENCE IN STARTING FIRE—AMENDMENT.

2. An amendment to a complaint for damages by fire caused by defendants' negligence, which charges negligence, not only in depositing ashes and live coals at a place from which fire would be liable to communicate to inflammable material, but also in not exercising requisite care in attending to and extinguishing the fire after it had been deposited on the ground, is germane to the controversy, and may properly be allowed by the trial court, even after reversal on appeal.

NONSUIT—SUFFICIENCY OF EVIDENCE OF NEGLIGENCE.

3. Defendants were operating a threshing machine run by a straw-burning engine, the method of removing ashes from which was by a trapdoor in the bottom of the ash pan, swung so that by tipping it the ashes would be dumped on the ground. Defendants were threshing in a field adjoining plaintiff's, on a windless day, and dumped ashes from the engine several times. Towards evening a wind arose, and a fire started near where the engine had stood, was communicated to stubble and inflammable material, and swept across plaintiff's field, causing him damage. An examination of the ashes on that evening disclosed live embers therein. *Held*, that the evidence presented a question of fact for the jury as to defendants' negligence in not extinguishing the fire, and that the overruling of a motion for a nonsuit was proper.

NEGLIGENCE IN STARTING FIRE—EVIDENCE OF USUAL WINDS.

4. In an action to recover damages resulting from a fire caused by dropping from an engine in a stubble field ashes and coals the fire in which the defendants negligently failed to extinguish, it is proper to permit a witness who had lived in the country many years, and was familiar with climatic conditions, to testify as to the likelihood of a wind on the evening of a day such as that on which the fire causing the damage occurred; the likelihood of a wind arising being a material element in the question of defendants' negligence, as they had lived there many years and must have been familiar with local climatic conditions.

WITNESS—CROSS-EXAMINATION.

5. In an action for negligence in dumping ashes from an engine, and failing to extinguish fire in such ashes, where defendants' engineer has testified to the

exercise of an exceptional care on the part of defendants' servants in extinguishing such fire because of a previous fire that day from the same engine, it is proper to permit a cross-examination as to the location of the previous fire.

NEGLIGENCE IN STARTING FIRE—INSTRUCTION AS TO LIABILITY.

6. In an action for negligence in dumping ashes from an engine in a field adjoining plaintiff's, and failing to extinguish the fire in such ashes, an instruction that a person who negligently sets or keeps fire on his own land, or permits its escape therefrom, is liable, whether he might reasonably have anticipated the particular manner of its communication or not, and that in determining the question of diligence the jury could consider the dryness or dampness of the atmosphere and earth, the time of year, the likelihood of wind arising, and its probable direction and strength, is not objectionable, as seeking to charge defendants with the consequences of any extraordinary wind which might occur, but fairly presents the rule that, under such circumstances, defendants would be liable for the results of an ordinary and probable wind.

REFUSING INSTRUCTIONS ALREADY GIVEN—

7. A refusal to give an instruction already substantially covered by the court's general charge is not error.

From Umatilla: STEPHEN A. LOWELL, Judge.

Action by J. T. Lieuallen against Matt and James Mosgrove for damages caused by a fire originating where defendants' threshing engine had stood, and said to have been caused by carelessly dropping live ashes into the stubble and failing to extinguish the fire remaining therein. There was judgment for plaintiff.

AFFIRMED.

For appellants there was a brief over the names of *John J. Balleray* and *Thos. G. Hailey*, with an oral argument by *Mr. Balleray*.

For respondent there was a brief over the names of *Carter & Raley* and *Stillman & Pierce*, with an oral argument by *Messrs. Chas. H. Carter* and *A. D. Stillman*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action to recover damages for loss of property caused by fire, alleged to have been the result of defendants' negligence. The case was reversed at a former term because the plaintiff was allowed to recover

upon a ground of negligence not alleged : *Lieuallen* v. *Mosgrove,* 33 Or. 282 (54 Pac. 200, 664). After the cause had been remanded to the court below, the plaintiff was permitted to amend his complaint by alleging that the defendants were negligent, not only in depositing the ashes and cinders at a place where the fire contained therein would be liable to communicate to inflammable material, but also in failing to exercise due care and caution in caring for and extinguishing the fire after it had been deposited on the ground. The allowance of such amendment is the first assignment of error relied upon.

1. It must be regarded as settled in this state that the court may, before trial, allow a pleading to be amended by inserting a new cause of action or defense, if it is germane to and connected with the subject-matter of the controversy : *Baldock* v. *Atwood,* 21 Or. 73 (26 Pac. 1058); *Talbot* v. *Garretson,* 31 Or. 256 (49 Pac. 978). And the trial court has power and authority to allow such an amendment after reversal on appeal whenever this court does not make a final disposition of the cause, but remands it to the court below for further proceedings : *Powell* v. *Dayton, etc. R. R. Co.* 14 Or. 22 (12 Pac. 83); *Fowle* v. *House,* 30 Or. 305 (47 Pac. 787). It is equally well settled that the ruling of a trial court in refusing or permitting an amendment to a pleading will not be disturbed on appeal, unless there was a plain abuse of discretion, to the material injury of some substantial right of the appellant : *Foster* v. *Henderson,* 29 Or. 210 (45 Pac. 899); *Davis* v. *Hannon,* 30 Or. 192 (46 Pac. 785). The court, therefore, had power and authority to allow the amendment complained of, and, as there does not seem to have been any abuse of discretion, its ruling in reference thereto will not be disturbed.

2. The amendment is not, as counsel argue, such a

departure from the original complaint as to amount, in effect, to a new and wholly different cause of action. It does not change the substantial controversy between the parties. The real purpose of the action is to recover such damages as plaintiff may have sustained from the destruction of his property by fire, caused by the negligence of the defendants. The amendment was germane thereto, and tendered an issue on a material fact arising out of the transaction which forms the basis of plaintiff's action, and was entirely proper. As said in *Talbot* v. *Garretson*, 31 Or. 256 (49 Pac. 978): "So long as the amendment is germane to the subject-matter of the controversy, we can see no objection to the court, in the exercise of a sound discretion, allowing the pleadings to be amended in furtherance of justice by inserting new and additional allegations material to such controversy, although they may, in effect, constitute a new cause of action or defense."

3. The next assignment of error is predicated upon the overruling of defendant's motion for a nonsuit, and the refusal of the court to instruct the jury to return a verdict in favor of defendants on account of a failure of proof. The evidence shows that during the harvest season of 1897 defendants were engaged in operating a threshing machine, the motive power of which was a straw-burning engine, so constructed that the only method of removing ashes or cinders therefrom was by a trapdoor in the bottom of the ash pan, swung on a rod through the center, so that by tipping it the ashes could be dumped on the ground. In the forenoon of August 7 the defendants were threshing in the field of one Bergevin, adjoining that of plaintiff, and during that time dumped the ashes or cinders from the engine on the ground several times. The day was calm, hot, and sultry until evening,

37 Or.—29.

when a wind arose, and caused a fire, which started at or
near the place where the engine stood, to communicate to
the stubble and inflammable material, sweep over Berge-
vin's field, and into the adjoining field of plaintiff, and
burn up and destroy large quantities of wheat, straw,
and stubble pasture belonging to him.   It seems quite
probable, from the physical facts, that the fire originated
in the ashes and cinders which had been dumped from
the defendants' engine, and the witnesses Wood and Mc-
Farland testify that they examined the cinder pile on the
evening of the fire, and found live embers in it.   This
evidence at least tends to show that the defendants did
not extinguish the fire in the ashes or cinders before leav-
ing the field, and for this reason a fire subsequently broke
out, and destroyed the plaintiff's property.   And while,
as said in the former opinion, '' no negligence can be im-
puted to the defendants from the mere fact that ashes,
which necessarily contained some fire, were taken from
the engine and placed upon the ground'' (*Lieuallen* v. *Mos-
grove*, 33 Or. 282 (54 Pac. 200, 664), they were bound to ex-
ercise reasonable care and diligence to extinguish the fire,
or take other reasonable precautions to prevent it from ig-
niting the stubble and other dry and combustible material,
and thus destroying the adjacent property.   Whether they
exercised such care was, under the testimony, a question
of fact for the jury, and the court committed no error in
overruling the motion for a nonsuit :   13 Am. & Eng. Enc.
Law (2 ed.), 491 ;   *McClelland* v. *Scroggin*, 48 Neb. 141 (66
N. W. 1123) ;   *Hanlon* v. *Ingram*, 3 Iowa, 81 ;   *Hewey* v.
*Nourse*, 54 Me. 256.

4.   It is also insisted that the court erred in permitting
the witness Coppock to answer the following question :
''State whether or not a high wind usually follows, dur-
ing the month of August, a close, sultry afternoon.''   The
witness had previously testified that he had lived in that

section of the country for many years, was acquainted
with climatic conditions during the harvest season, and
that the afternoon preceding the fire had been close, hot,
and sultry.   We think, under such circumstances, the
question, and affirmative answer thereto, were proper and
competent.   The dryness of the season, the proximity to
the engine of dry, combustible material, easily ignited,
and the probability of a wind coming up, were proper
matters to be considered by the jury in determining
whether the defendants, under the surrounding circum-
stances, used the requisite degree of prudence and cau-
tion to prevent the fire from communicating to and de-
stroying the adjoining property.   They were using a
dangerous element, under circumstances of special danger
to adjacent property, and were therefore required to ex-
ercise care and vigilance commensurate with such danger;
and, in this connection, the probability or likelihood of a
wind arising was important :   13 Am. & Eng. Enc. Law
(2 ed.), 418 ;   *Needham* v. *King*, 95 Mich. 303 (54 N. W.
894) ;   *Salisbury* v. *Herchenroder*, 106 Mass. 458 (8 Am.
Rep. 354) ;   *Kellogg* v. *Chicago & N. W. Ry. Co.* 26 Wis.
223 (7 Am. Rep). 69.   The defendants had resided in that
section of the country for several years, and were neces-
sarily familiar with the climatic conditions, and if a wind
was liable to blow in the evening, and thus greatly en-
hance the danger from any fire that might be left in the
ashes or cinders, they were bound to increase their care
on that account.   The line of liability is drawn in some
of the adjudications between cases where the operation of
a wind has been usual and ordinary, and where it has
been extraordinary, or of a nature entirely unexpected ;
the defendant being held responsible in the former in-
stance, but not in the latter.   But it was not sought by
the testimony of Coppock, as we understand it, to make
the defendants liable for an extraordinary or unprece-

dented wind, but only on account of the intervention of that which was usual and ordinary.

5.   Again, it is argued that the court erred in permitting the witness Kinney to show, on a map used at the trial, the place where another fire from defendants' engine occurred on the same day.   Kinney was the engineer in charge of the engine on the day of the fire.   On direct examination, he testified to the care and caution exercised by himself and defendants' other servants and employees in caring for and extinguishing the fire in the ashes or cinders taken from the engine, and on cross-examination stated that at the setting where the fire is claimed to have originated they used more caution than usual because of some previous fire.   It was on account of this statement that he was interrogated by counsel as to the location of the previous fire, and we think it was proper cross-examination.

6.   The next assignment of error is predicated upon the giving by the trial court of the eighteenth and twenty-first instructions.   These instructions are very long, but it is only necessary to call attention to the objectionable parts pointed out by appellants in their brief.   In the eighteenth the court said that a person who negligently sets or keeps a fire on his own land, or permits it to escape therefrom through negligence, is liable to his neighbor for injuries caused thereby, whether he might reasonably have anticipated the particular manner of its communication or not.   And again, ''In determining the question of diligence, you have a right to take into consideration the dryness or dampness of the atmosphere and the earth, the strength and probable direction of the wind,'' etc.   In the twenty-first, the court, among other things, said :   ''Among other circumstances, you may consider the time of year when the fire occurred ; the business in which defendants were engaged when it oc-

curred ; what, if any, probability there then was of winds arising." The objection urged to these instructions is that the court meant to have the jury understand that defendants were liable for the result of any extraordinary wind that might occur. But we do not think this is a reasonable or fair interpretation of the instructions. The court evidently intended to, and did, state to the jury the rule of law already indicated, that the question of reasonable care and diligence must be determined from the circumstances, and in a measure depend upon the facts of each particular case.

7. The remaining assignments of error are based upon the refusal by the trial court to give divers and sundry instructions requested by the defendants. We have examined and compared the instructions refused with those given, and are of the opinion that the instructions refused were substantially covered by the general charge. It follows that the judgment of the court below must be affirmed, and it is so ordered.   AFFIRMED.

Decided 30 July ; rehearing denied 15 August, 1900.