Argued October 29, decided November 20, 1913.

# ZIMMERLE v. CHILDERS.

### (136 Pac. 349.)

**Pleading—Amendments—Allowance.**

1. Under Section 102, L. O. L., providing that the court may, at any time before trial, allow any pleading to be amended, and for like reasons may allow such pleading to be amended at any time before the cause is submitted, when the amendment does not substantially change the cause of action, the complaint in an action of replevin may be amended before trial by excluding some of the chattels mentioned and including others, the trial court having such extensive power to allow amendments before trial that it may allow the filing of an amended complaint containing a new cause of action, and the last provision in the statute applying only to trial amendments.

**Trial—Arguments of Counsel.**

2. In replevin against a sheriff for chattels taken upon attachment, the sheriff being the real party in interest, though he has an indemnity bond, statement of counsel in argument that he was not the real party in interest, thus bringing before the jury the fact that he had the indemnity bond, is improper.

**Trial—Arguments of Counsel—Scope.**

3. In replevin for chattels which plaintiff claimed under a bill of sale, argument of counsel to the effect that the bill of sale had been recorded is improper, where the evidence did not show such recordation.

**Trial—Argument of Counsel—Duty of Court.**

4. It is the duty of trial courts to compel counsel to keep within the limits of legitimate argument, and they should not allow them to argue matters not within the issues and not within the evidence.

**Appeal and Error—Review—Harmless Error.**

5. Improper argument by counsel constitutes reversible error, there being a presumption of prejudice unless the appellate court can see that the adverse party was not injured.

**Chattel Mortgages—What Constitutes—Determination.**

6. In determining whether a transaction is a sale or a chattel mortgage, the court will take into consideration the intention of the parties in view of all the circumstances, the question whether a bill of sale is really a chattel mortgage or a sale being principally one of intent.

> [As to distinction between chattel mortgage and conditional sale, see notes in Ann. Cas. 1912C, 361; 1 Am. St. Rep. 63; 94 Am. St. Rep. 234.]

**Chattel Mortgages—Bills of Sale—What Constitutes.**

7. Where a bill of sale was given as security for the payment of two overdue notes, the transaction constitutes a chattel mortgage, it

appearing that the payee of the notes retained them and was to sell the property covered by the bill of sale and credit the amount received on the debt, but that no credit was to be made until the payee received something out of the sale of the property.

**Chattel Mortgages—Actions—Establishment.**

8. In an action at law upon a document purporting to be a bill of sale absolute on its face, it may be shown to be a chattel mortgage.

**Chattel Mortgages—Recordation.**

9. A bill of sale, if to secure a debt, may be recorded as a chattel mortgage, provided it is duly attested, acknowledged and certified.

[As to effect of failure to record chattel mortgage, see note in 137 Am. St. Rep. 471.]

From Union: JOHN W. KNOWLES, Judge.

En Banc. This is an action by David Zimmerle against Frank P. Childers. From a judgment in favor of plaintiff, defendant appeals. The facts are fully set forth in the opinion by Mr. Justice Ramsey.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief over the names of *Mr. R. J. Green* and *Mr. Francis S. Ivanhoe,* with an oral argument by *Mr. Green.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On the 25th day of October, 1912, the plaintiff began this action to recover possession of 24 hogs and a lot of other personal property described in the original complaint. On November 21, 1912, the defendant filed an answer to said complaint. On October 20, 1912, the plaintiff filed a motion for leave to file an amended complaint, and appended to his motion a copy of the proposed amended pleading. It appears that said amended complaint *adds* to the property sought to be recovered by the original complaint 17

tons of baled timothy hay of the alleged value of $175. We believe that the court did not pass on said motion for leave to file said amended complaint. On January 9, 1913, the plaintiff filed another motion for leave to file an amended complaint, and appended a copy of said proposed amended complaint to said motion. The court on February 27, 1913, made an order permitting said amended complaint to be filed. This was done against the objection of the defendant. This amended complaint omits all the personal property described in the original complaint excepting the 24 hogs, and includes the 17 tons of baled timothy hay, not mentioned in the original complaint. This hay was included in the other amended complaint referred to, *supra*. It will be noticed that the amended complaint, allowed by the court below to be filed, omits a large amount of property described in the original complaint, and includes 17 tons of hay not named therein, and that the only property described in both the original and the amended complaint so filed is the 24 hogs. On January 27, 1913, the defendant filed an answer to said amended complaint denying every allegation thereof, excepting as especially admitted in said answer. The answer alleged in substance, *inter alia,* that the defendant was the sheriff of Union County; that J. B. Weaver began an action against the Grande Ronde Orchard Company, a corporation, in the Circuit Court of Union County, on July 11, 1912, to recover from said company the sum of $442.37 and costs; that in said action a writ of attachment was duly issued and directed to the defendant as sheriff of said county, requiring him to attach and safely keep any property that he could find in said county belonging to said Grande Ronde Orchard Company, to secure the payment of any judgment which said J. B. Weaver might recover in said action; that said writ

was duly issued out of said Circuit Court in said cause; that said writ was placed in the hands of the defendant herein, as sheriff for service on July 11, 1912; that on said day, by virtue of said writ, the defendant herein did attach as the property of the Grande Ronde Orchard Company the said 17 tons of timothy hay and said 24 hogs, described in the amended complaint and some other property; that on November 4, 1912, said J. B. Weaver, in the said action by him begun against said Grande Ronde Orchard Company, as aforesaid, duly obtained in said Circuit Court a judgment against said company for the sum of $505.85 and $138.80 costs and an order for the sale of said attached property; that on November 11, 1912, a writ of execution and an order of sale of said attached property was regularly issued out of said court to enforce said judgment; that said writ of execution was placed in the hands of the defendant herein for service; that the defendant herein as such sheriff, by authority of said execution and order of sale, after giving due notice thereof, on November 29, 1912, duly sold all of said 17 tons of timothy hay and 22 of said hogs, and released all of the other property so attached; that the defendant herein alleged, also, that the plaintiff was the treasurer and business manager of said Grande Ronde Orchard Company, and that on or about March 12, 1912, the plaintiff procured to be made out at Seattle, Washington, by one H. D. Smith, who claimed to be the president and one John Leigh, who claimed to be secretary of said company, a bill of sale, by which said president and secretary of said company *pretended* to sell and convey to the plaintiff, who was treasurer and general manager of said corporation, the said 17 tons of timothy hay and 24 hogs, and a large amount of other personal property belonging to said company; said *pre-*

*tended* bill of sale was made without any valuable consideration; that it was made by said president and secretary without any authority from the board of directors of said company, and without any valuable consideration passing from said David Zimmerle to said corporation, and pretended to transfer to said Zimmerle all of the personal property belonging to said company; that said *pretended* sale was sham, and without consideration, and was made for the purpose of hindering, delaying and defrauding the creditors of said company, and especially said J. B. Weaver; that it did so hinder and defraud said J. B. Weaver; that the said *pretended* bill of sale was sham and fraudulent; that all of said personal property remained in the possession of said company, and that no part thereof was ever delivered into the possession of the plaintiff, but it remained wholly in the possession of said company after said *pretended* bill of sale was made until it was attached, as aforesaid; and that the plaintiff did not, at any time, own said property, or any part thereof, etc. The plaintiff replied to said answer, denying most of the new matter therein, and setting up new matter. The reply alleges, in substance, *inter alia,* that at the date of the bill of sale referred to in the answer, said Grande Ronde Orchard Company owed the plaintiff two promissory notes, one for $2,400 and the other for $1,000—both past due, and, being unable to pay the same, on the 12th day of March, 1912, sold all of said personal property to the plaintiff, *and that the consideration for said sale was that the plaintiff should sell said personal property, and apply the proceeds thereof on said notes,* and that said bill of sale was made in good faith, etc.

The defendant specifies several alleged errors for which he asks a reversal of the judgment of the court below.

1. The first point made is that the court erred in permitting the plaintiff to file the amended complaint. Section 102, L. O. L., provides: "The court may, at any time before trial, in the furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause," etc. The statute relating to amendments of pleadings is liberally construed in favor of parties asking permission to amend.

It is within the power of the trial court to allow, *before trial,* an amended complaint to be filed *containing a new cause of action: Talbot* v. *Garretson,* 31 Or. 256 (49 Pac. 978); *Lieuallen* v. *Mosgrove,* 37 Or. 448 (61 Pac. 1022); *York* v. *Nash,* 42 Or. 327 (71 Pac. 59).

In *Talbot* v. *Garretson,* 31 Or. 256 (49 Pac. 978), the court says: "It follows, we think, that it is within the power of the trial court to allow, *before trial,* an amended complaint to be filed containing *a new cause of action or suit* material to the controversy then before the court."

In *Lieuallen* v. *Mosgrove,* 37 Or. 448 (61 Pac. 1022), the court says: "It must be regarded as settled in this state that the court may, *before trial,* allow a pleading to be amended by inserting *a new cause of action or defense,* if it is germane to or connected with the subject matter of the controversy."

In *York* v. *Nash,* 42 Or. 327 (71 Pac. 59), the court says: "Indeed, the court may, in the exercise of a sound discretion, permit a pleading to be amended *before trial* by introducing a new cause of action or defense, material to the subject matter of the controversy."

In this case, the amendment of the complaint consisted in leaving out a large amount of personal property that was described in the original complaint, and

inserting in the amended complaint the 17 tons of baled timothy hay that was not included in the original pleading. The 24 hogs were described in both pleadings. The 17 tons of timothy hay were attached by the defendant at the same time that he attached the 24 hogs, and the other property. It appears by the answer that the property that was omitted from the amended complaint *was released by the defendant* when he sold the hay and hogs.

The provision of Section 102, L. O. L., providing that the amendment of a pleading shall not substantially change the cause of action or the defense, *does not apply to amendments made before trial.* It applies only to amendments made during the trial. The order of the court permitting the amended complaint to be filed was properly made.

2, 3. When the trial began, the attorney for the defendant stated that J. B. Weaver, in whose action the property in dispute was attached and sold, was absent from the State of Idaho, and that he had been unable to get in communication with him, or to have him present at the trial. One of the attorneys for the plaintiff, in making his opening statement to the jury, declared that the defendant was only a *nominal* party; that Mr. Weaver was the *real* party in interest, but did not show sufficient interest in the case to be present at the trial. The defendant took exception to the remark of said counsel for the plaintiff, and the exception was allowed by the court. Afterward, in rebuttal, said attorney for plaintiff called the defendant as a witness, and over the objection of the defendant to such evidence as immaterial, he was required to testify that he was the sheriff at the time the action was commenced, and that he had an indemnity bond of $500 to indemnify himself against loss in case the jury should find against him. And, in his closing argument to the jury, said

attorney for the plaintiff declared, in effect, that the defendant Childers was only a *nominal* party to the suit; that J. B. Weaver was the *real* party in interest, who had not shown sufficient interest in the trial to attend. The attorney for the defendant excepted to said remarks, and his exception was allowed by the court. The said attorney for the plaintiff, in his closing address to the jury, appealed to the jury to find for the plaintiff, because plaintiff had shown his good faith by getting a bill of sale from the Grande Ronde Orchard Company and *placing the same on record as notice to all the world* that he was the owner of the property in dispute on the 12th day of March, and thereafter. The attorney for the defendant objected to this statement, and asked that the same be taken from the jury on the ground that there was no evidence before the jury that any such bill of sale, or pretended bill of sale, was ever placed on record, and that the pretended bill of sale was not witnessed so as to entitle it to be recorded, and there is no law authorizing a bill of sale to be placed on record, even if properly witnessed. The said attorney for the plaintiff declared that he did not claim that the instrument was entitled to go on record, but insisted that the jury had a right to consider the fact that it was placed on record as showing good faith of the plaintiff. The defendant's request was denied by the court, and an exception to the ruling allowed.

The questions in this case were, whether the plaintiff was the owner of the property described in the amended complaint, and if he was, what was its value. The real and only party plaintiff was David Zimmerle, and the real and only party defendant was Frank P. Childers. J. B. Weaver was not a party to the action in any sense. The judgment sought by the plaintiff was against Childers, and not against Weaver. The

counsel for the plaintiff had no right to say to the jury
that Childers was only a *nominal* party, and that
Weaver was the *real* party.  He had no right to bring
Weaver into the case at all.  The case was between
Zimmerle and Childers.  To assert that Childers was
only a *nominal* party, and that Weaver was the *real*
party was to misrepresent the issue to be tried.  It
was immaterial to any issue in the case to prove that
the defendant had a bond to indemnify him against
having to pay a possible judgment.  The indemnity
bond was a matter between the defendant and the per-
son who gave it.  The jury had no right to consider
that fact at all.  To prove that the defendant had a
bond of indemnity, and then to appeal to the jury and
say that the defendant was only a *nominal* party, and
that Weaver was the *real* party, was an indirect way
of saying to the jury that Weaver or the person who
gave the bond and not Childers would have to pay the
judgment, and therefore that they should be the more
willing to find a verdict for the plaintiff.  Such ap-
peals are made for the purpose of injecting into a case
an irrelevant and vicious element.

There was no evidence that the bill of sale had been
recorded.  Notwithstanding this fact and the further
fact that counsel for the plaintiff expressly admitted
that it was not entitled to be recorded, he appealed to
the jury to find for the plaintiff, because, as he as-
serted, the plaintiff had shown his good faith by ob-
taining the bill of sale *and placing it on record as
notice to all the world that he was the owner of the
property in dispute.*  The counsel for the plaintiff did
not prove that the paper had been recorded, but as-
serted that fact without proof.  Counsel has no right
to place a fact like that before the jury by a statement
made in his argument.  If he wanted that fact before
the jury, he should have offered proof of it.  If he

had offered proof that the bill of sale had been recorded, it would have been objected to and probably ruled out. He got it before the jury as a part of his closing address, and appealed to them to consider it in finding their verdict.

4, 5. The trial of a hotly contested lawsuit is a battle, and able lawyers with good intentions sometimes, out of zeal for their client's success, overstep the lawful bounds of their privileges, as counsel, to the injury of the opposite party. When they do so, it is the duty of the trial courts to stop them and constrain them to keep within the limits of their privileges. When objections are made to improper remarks by counsel, in their addresses to juries, and the courts overrule the objections, and permit counsel to go on with improper statements, such action is reversible error, unless it can be seen by the appellate court that the adverse party was not injured by such remarks.

In Elliott's General Practice, Volume 2, Section 695, the author says: "Whenever counsel is guilty of misconduct in argument, an objection should be made, and exception to the ruling of the court, or refusal to rule thereon, taken at the time and brought into the record by bill of exceptions. Counsel has a right to interpose, in a proper manner during the argument of adverse counsel, to make such objection. If that court, over proper objection, erroneously permits counsel to persist in such misconduct, an instruction to the jury to disregard, or not to consider, the improper remarks, will not, as a general rule, cure the error." The same author in the same volume (Section 698) says: "As a general rule, *counsel* in argument *must confine themselves to the facts brought in evidence.* Thus, it is error, and cause for a new trial to permit counsel, over proper objections and exceptions, to state and comment upon facts pertinent to the issue, but not

in evidence. *So, it is improper for counsel to refer to facts not pertinent to the issue, but calculated to prejudice the case to the injury of the opposite party."*

In 38 Cyc., pages 1497, 1498, it is said: *"It is highly improper, and ordinarily ground for reversal, for counsel in argument to tell the jury that defendant is insured or has indemnity against any verdict rendered against him in the case on trial."*

In *Lassig* v. *Barskey* (Sup.), 87 N. Y. Supp. 425, the court says: "In view of the information conveyed by plaintiff's counsel to the jurors, under the guise of inquiring into their qualifications, that the defendant was insured against loss in the event of a recovery against him, and a repetition of this reprehensible practice in the course of the cross-examination of one of defendant's witnesses, the judgment and order appealed from should be reversed, and a new trial ordered."

In *Hollis* v. *United States Glass Co.*, 220 Pa. 49 (69 Atl. 55), the facts were that the plaintiff's counsel, in the court below, had said in his argument to the jury: "It is nothing to the glass company what this verdict shall be; it is the insurance company that will have to pay the verdict," etc. Commenting on this, the court said:

"This was an invitation to find a verdict on false grounds, and it is open to the objections named in the opinion in *Saxton* v. *Pittsburg Ry. Co.*, 219 Pa. 492 (68 Atl. 1022).

"In determining whether there was actionable negligence and damages sustained, it cannot be pretended that the fact that the defendant was insured against loss had the slightest bearing. The statement of counsel was improper, and it was prejudicial to the defendant."

In *Manufacturing Co.* v. *Woodall,* 115 Tenn. 605–608 (90 S. W. 623), the facts were that the plaintiff was suing for damages for personal injuries, and the counsel for the plaintiff made several attempts to prove that the defendant was insured against having to pay any verdict that might be recovered, but the trial court would not permit such evidence to be given. However, in the argument to the jury the attorney for plaintiff claimed that he had a right to *assume* that the defendant had such insurance, and claimed that if it had not had such insurance it would have been more careful. Counsel for the defendant at once objected to said remarks, and moved for a mistrial on account thereof, but the trial court denied the motion and instructed the jury not to consider said improper remarks. The Supreme Court, commenting on said remarks and the action of the trial court, said: "Should a verdict obtained under such conditions be permitted to stand? We think not. It is too well settled to require citation of authorities that, in an action of negligence, it is incompetent to show that the defendant is insured against loss in case of a recovery against him on account of his negligence. * * * The effect of this could not have been otherwise than prejudicial to the company, in that the jury would the more readily return a verdict against it upon the assumption that it was indemnified against loss."

In *Lone Star Brewing Co.* v. *Voith* (Tex. Civ. App.), 84 S. W. 1100, the court says: "There are a number of assignments of error predicated upon bills of exception which show, on the part of appellee's counsel," persistent efforts "during the trial, from the beginning to the close of his argument, to get before the jury the fact that appellant was insured by some insurance company against loss, by reason of appellee's injuries, and to create the impression upon the jury

that by reason of such insurance the damages sued for, if recovered, would fall upon the insurance company, and not upon the appellant. We are of the opinion that this conduct on the part of plaintiff's counsel was prejudicial to the defendant, and constitutes error, which requires a reversal of the judgment.''

In this case, the counsel for plaintiff, over the objection of the defendant, proved that the defendant had a bond indemnifying him against having to pay any judgment not exceeding $500, that might be recovered, and then argued to the jury that the defendant was only a *nominal* party and that the *real* party was J. B. Weaver, at whose suit the property was attached. This conduct of the plaintiff's counsel was prejudicial error.

The remarks of the plaintiff's counsel, over the objection and exception of the defendant, concerning the pretended recording of said bill of sale, were error, also. Trial courts are clothed with ample power to prevent counsel's arguing to jurors matters not within the issues, or not within the evidence, and they should not hesitate to use this power, and thus safeguard the rights of litigants.

As a new trial will be granted, it is not necessary to pass on the question whether the *onus* is on the plaintiff to show that the bill of sale was executed by proper authority, or whether the authority of the officers will be presumed *prima facie* from the manner in which said paper appears to have been executed. The parties can get their evidence in better form for a new trial, we presume.

6, 7. The appellant contends that said bill of sale, if it has any validity, is shown by the evidence to be a mortgage. On its face it is a bill of sale. The evidence tends to prove that, at the time that this paper bears date, the Grande Ronde Orchard Company was

indebted to the plaintiff in the sum of $3,400, which was evidenced by two promissory notes. These notes were past due, and the company was in financial distress and unable to pay them. One note was given for $1,000 and the other for $2,400. The bill of sale purports to have been made for $1 and other valuable considerations. The plaintiff alleges in his reply that the consideration for the execution of the bill of sale was that he should sell the property described therein and apply the proceeds thereof upon said two promissory notes. In his evidence he testifies that he demanded the money owing him on said two notes, and that he got the bill of sale, with the agreement that he would sell the property and apply what he should get therefrom on said notes. He kept both notes and has not credited anything on either of them. The plaintiff had this bill of sale prepared and sent it to Seattle, and received it back through the mail, after it had been signed. Mr. Geo. L. Cleaver, one of the directors of the Grande Ronde Orchard Company, testified, in substance, that it was his understanding that this bill of sale was made to the defendant so that he could sell some of the property on the ranch at Cove, and apply it on his notes that were due. While this instrument on its face purports to be an absolute bill of sale, the allegation in the reply cited *supra,* and the evidence of the plaintiff and Mr. Cleaver, tend to prove that it was executed to secure the payment of the promissory notes referred to *supra.*

If this bill of sale was intended at the time that it was executed to operate as security for the payment of a debt owing by the vendor to the vendee, it is, in effect, a chattel mortgage. In 35 Cyc., pages 34, 35, the law is stated thus: "In determining whether a transaction is a sale or a chattel mortgage, the court will take into consideration the intention of the parties, in view of all the circumstances."

In 4 Am. & Eng. Ency. of Law (2 ed.), pages 562, 563, the rule is stated thus: "A bill of sale, although absolute on its face, if taken as security for a debt, is in effect a chattel mortgage, and, as to the immediate parties thereto, will in equity be treated as such. But, on the other hand, the general principle is that, where the transaction clearly shows that the entire interest in the property is conveyed without reservation, it will be treated as an absolute sale."

In *Nicklin* v. *Betts Spring Co.*, 11 Or. 407 (5 Pac. 52, 50 Am. Rep. 477), the court says: "It is hardly necessary to cite authorities to show that a bill of sale absolute in its terms becomes a chattel mortgage upon proof by parol that it was made to secure a debt. It is the nature of the transaction at its inception which determines the character of the instrument."

In *Spalding* v. *Brown,* 36 Or. 166 (59 Pac. 187), the court says: "There is perhaps no conclusive single test by which it may be determined that any transaction may be denominated or legally characterized as a mortgage, as distinguished from a conditional sale. The primary inquiry may be said to be the intention of the parties, and this may be determined, not alone by the instrument which forms the basis of the transaction, but by the attendant and surrounding circumstances, and the conditions under which it was delivered and designed to become effective."

In this case if it was the intention of the parties at the time the instrument was executed to convey to the vendee the entire interest in the property without reservation, said instrument was a bill of sale; but, if it was the intention of the vendor to convey the property to the plaintiff to secure the debt which the company owed him, with the agreement that he was to sell the property and to credit the amount received for it· on the debt, and that no credit was to be made on the debt until the plaintiff received something for the sale

of the property, such instrument was in effect a chattel mortgage. It is largely a matter of intention, to be determined by the facts and circumstances surrounding the transaction. But, in cases of doubt, courts are inclined to construe the transaction as a mortgage: *Spalding* v. *Brown,* 36 Or. 160 (50 Pac. 185).

8, 9. In this state, in an action at law, a bill of sale, absolute on its face, may be shown to be a chattel mortgage: *Bartel* v. *Lope,* 6 Or. 326; *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513 (70 Pac. 523).

If a bill of sale is made to secure a debt, it is a chattel mortgage, and, if executed, witnessed, acknowledged and certified as a chattel mortgage is required to be, it is entitled to be recorded *as a chattel mortgage: Nicklin* v. *Betts Spring Co.,* 11 Or. 406 (5 Pac. 51, 50 Am. Rep. 477).

We do not find it necessary to pass on the other questions raised on this appeal.

The judgment of the court below is reversed and a new trial is granted.        REVERSED.