SOLOMON F. SHAD, STEPHEN H. MELTON, *et al.*, AP-
PELLANTS, VS. C. O. LIVINGSTON, APPELLEE.

BILL OF SALE, ABSOLUTE ON FACE—WHEN HELD TO BE MORTGAGE—
PAROL EVIDENCE ADMISSIBLE TO EXPLAIN TRANSACTION—ASSIGNEE
FOR CREDITORS TAKES PROPERTY OF ASSIGNOR CUM ONERE.

1. A bill of sale absolute on its face may be shown by parol proof to
   have been given as security for a loan of money, and when so
   shown, held to be a mortgage under our statute declaratory of
   what shall be deemed to be mortgages.

2. Where the relationship of debtor and creditor, or borrower and
   lender of money is admitted to exist between the parties, and

that a bill of sale absolute on its face was executed by the debtor to the creditor in connection with the making of such loan, such bill of sale will be held to be a mortgage if the preponderance of proof shows that it was executed and delivered by the debtor to the creditor for the purpose and with the intention of making such loan secure.

3. A voluntary assignee for the benefit of creditors takes the property of the assignor *cum onere*, subject to all equities to which it was liable in the hands of the assignor.

Appeal from a Decree of the Circuit Court for Duval County.

The facts of the case are stated in the opinion.

*Call & Jones* and *C. P. & J. C. Cooper* for Appellants.

*A. W. Cockrell & Son* and *M. C. Jordan* for Appellee.

TAYLOR, J.:

C. O. Livingston, the appellee, on the 10th day of June, 1887, filed his bill in equity in the Circuit Court of Duval county against Solomon F. Shad and Stephen H. Melton, as assignee of said Shad, for foreclosure of mortgage. The bill alleges that on the 8th day of December, 1886, the said Shad being indebted to him, the said Livingston, in the sum of $2,500 for money loaned him in cash on the 6th day of December, 1886, for the purpose of purchasing the property alleged to be mortgaged, by an instrument in writing having the form of a bill of sale absolute on its face, did mort-

gage to the complainant a lot of personal property, consisting for the most part of furniture, carpets, bedding, &c., in a hotel in Jacksonville, Florida, and the furniture and fixtures in a bar room attached to said hotel, together with some merchandise in said bar room, consisting of a small quantity of whisky, wine and cigars, for the purpose of securing said loan. That said instrument, though in form a bill of sale absolute, was executed and delivered to him for the purpose and with the intention of securing said indebtedness represented by five promissory notes of $500 each, all dated the 6th of December, 1886. That said instrument was duly proven for record, and was duly recorded in the public records of Duval county, on said 8th day of December, 1886. That no part of said indebtedness has been paid, except the sum of forty dollars. That said Shad on the —— day of May, 1887, by an instrument purporting to be an assignment for the benefit of creditors, conveyed all of his goods, chattels, effects and *choses in action* to the said Stephen H. Melton. That the said Melton, as assignee of said Shad, has advertised said property to be sold. The bill prays for foreclosure, for a sale of the mortgaged property, and that the proceeds may be applied to the payment of said mortgage, and for a deficiency judgment generally should the property not realize enough to pay the mortgage claim in full; and prays also for an injunction to restrain the said Melton as assignee from selling said property. Copies of the five notes for $500 each

are attached as exhibits to the bill, and each of them expresses the fact that it is secured by mortgage of even date therewith. An injunction was granted and served as prayed for in the bill. The day following the filing of the complainant's bill, A. E. Massman Brothers & Co., a firm doing business in Philadelphia, Penn., filed their petition in said Circuit Court, alleging that on the 15th day of April, A. D. 1887, the said Shad was, and had been ever since, indebted to them in the sum of $760.36 for goods and merchandise furnished by them to Shad to carry on his business as a dealer in liquors, &c., as would appear from an itemized account of said indebtedness attached as an exhibit to said petition. That on the —— day of ——, 1887, the said Shad executed a deed of assignment to the said Melton of all his goods and chattels for the benefit of the creditors of Shad. That the debt due petitioners had never been paid, and the goods assigned to Melton in trust had not been sold, nor said trust closed. Said petition recites the following of the bill of foreclosure by Livingston, and then assails the bill of sale sought to be foreclosed as a mortgage, alleging, on information and belief, that said bill of sale was without consideration; that it was not a mortgage; and that no possession of the property conveyed thereby ever passed to said Livingston, the said Shad having been left in possession thereof. That petitioners had no notice of same, and that the same, either as a bill of sale or mortgage, is a fraud upon and void as to petitioners as creditors of the said Shad. Said

petition prays that said petitioners be allowed to inter-
vene and to be made parties defendant to said bill for
foreclosure, and to file answers or such other pleadings
thereto as might be necessary to protect their interests
in the premises.    The prayer of this petition was
granted upon an *ex parte* application of the petitioners,
by an order of the court dated June 11th, 1887, and
the petitioners made parties defendant to said bill for
foreclosure.    The defendants all answered separately.
The answer of Solomon F. Shad admits the execution
of the notes set out in the bill, but denies that the bill
of sale was executed by him for the purpose of secur-
ing said notes, or any of them, and alleges the follow-
ing to be the facts in reference thereto:  That on the
6th  day  of  December,  1886,  obtained  from  Liv-
ingston  the   sum  of   thirty-five  hundred  ($3,500)
dollars,  and  to  secure  same  executed  to  him  the
said notes, and at the same time two papers, which,
in form, are mortgages, one of said mortgages for
$2,500 upon his stock, furniture and fixtures in the
hotel known as the Jacksonville Hotel, and the other
for $1,000 upon twenty-one acres of land situated near
the city of Jacksonville.   That at the time of the exe-
cution of said two mortgages, Livingston insisted on
his executing a bill of sale of the personalty, instead
of a mortgage, but that on the advice of his attorneys
he refused.   That the said $3,500 was delivered to him
by Livingston on said 6th day of December, 1886, and
said notes and mortgages were delivered to Livingston
on the same day.   That it was agreed between them at
the time of the execution of said notes and mortgages

that the personal property should be insured for the benefit of Livingston by him, Shad. That afterwards, on the 8th of December, 1886, Livingston, accompanied by one W. B. Owen, an insurance agent, called upon him and represented to him that insurance companies would not insure mortgaged personal property; that in order to obtain insurance upon the said personal property contained in said mortgage, it was necessary to execute a nominal bill of sale to the said Livingston. That both Livingston and said Owen further represented to him that if he would execute said nominal bill of sale the same would be held by the said Owen merely to protect himself and the insurance company for which he was agent. That it was expressly understood between him, Livingston, and Owen, that in no event was the said nominal bill of sale to be delivered to Livingston. That relying upon said representations and said understanding and agreement he, without consulting his attorney, then and there, on the said 8th day of December, 1886, executed the said nominal bill of sale set up in the bill, and delivered the same to the said Owen to be held by him as aforesaid, for the sole purpose of enabling the said Livingston to obtain insurance. That said bill of sale was never intended or agreed to be substituted for, or to take the place of, the said mortgage, and that there was no good or valid consideration therefor, and that the same was never delivered by him to the said Livingston, or by any one authorized by him so to do. That said Livingston has

never recorded the said chattel mortgage, and has never offered to return the same to him, and that to the best of defendant's knowledge and belief said Livingston still has the possession and control thereof. The answer also sets up that defendant is advised that under the laws of Florida said chattel mortgage is of no force or effect whatever, because it was never recorded, and the possession of the property therein having remained in his, the mortgagor's hands. That instead of recording said mortgage, Livingston, without his knowledge or consent, and against the express agreement referred to, by some means unknown to him, procured from said Owen the said nominal bill of sale, as he (Shad) believed with the intent to defraud him and his other creditors, and had the same recorded. That the personal property described in said nominal bill of sale remained at all times, after the execution of said mortgage and nominal bill of sale to the date of the assignment by him to Melton, in his exclusive custody and control. The answer admits the execution of the deed of assignment to Melton in trust to dispose of his said property for the benefit of his creditors generally. The answer further says that said bill of sale was recorded without his knowledge or consent, and that he had no knowledge that it was recorded until after he executed said assignment.

The answer of the assignee, Stephen H. Melton, reiterates, upon information derived from Shad, substantially the facts set up in the answer of Shad. The answer of A. E. Massman, Bros. & Co., after stating

their status as creditors at large of Solomon F. Shad, and setting forth the assignment to Melton, substantially as contained in their petition to be made parties defendant, also reiterates, in substance, the facts set out in the answer of Shad. By the written consent of all parties the property was sold by a special master under an order of the court, and the proceeds paid into the registry of the court to abide the final determination of the controversy. The cause was referred to a master to take testimony, and upon the testimony reported at the final hearing a decree was rendered in Livingston's favor for $1,250, the amount then found to be actually due of his mortgage debt against the defendant, Shad, together with costs, and that the amount of the proceeds of the property sold by consent of all parties, amounting to $1,247.20, should be paid over to him, Livingston, out of the registry of the court, and should be credited on said decree, and that he have judgment over for the residue. From this decree all of the defendants have appealed here.

The only question presented for our consideration is, whether, with the proofs submitted, under the rules of law governing in such cases, the court below ruled correctly in holding the bill of sale, absolute on its face, to have been executed and delivered by Shad to Livingston for the purpose and with the intention of securing the payment of the loan of money evidenced by the five promissory notes.

In the case of Matthews vs. Porter, 16 Fla., 466, where a deed to realty, absolute upon its face, was sought, by a stranger to such deed, to be shown to be a mortgage in the hands of the grantee therein for the security of money alleged to be due from such stranger to the deed to the grantee therein, this court, following the well establised rule elsewhere, held that in such cases, where there is a positive denial in the answer, the clearest and strongest testimony must be produced to establish the loan. Applying this rule with all of its strictness to the facts in the case at bar, our conclusion is, that the decree appealed from was proper.

Our statute, McClellan's Digest, section 1, p. 765, Rev. Stat. of Fla., sec. 1981, provided that "all deeds, obligations, conditioned or defeasible, bills of sale, or other instruments of writing, made for the purpose, or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor, or from the debtor to some third person or persons in trust for the creditor, shall be deemed and held as mortgages, and shall be subject to the same rules of foreclosure, etc., as are prescribed by law in relation to mortgages." . It has also been settled here that parol evidence is admissible in equity to show that a deed of conveyance, absolute on its face, was intended as a mortgage. First National Bank vs. Ashmead, 23 Fla., 379, 2 South. Rep., 657, and

·cases there cited. It is admitted by all the parties that the relation of debtor and creditor did in fact ·exist between Shad and Livingston, and that in this transaction there was never any pretense of any other relationship between them than that of debtor and ·creditor. It is further admitted that Livingston did in fact loan to Shad the full sum of $2,500 upon the faith of the personal property involved in this contro· versy as security for the repayment thereof. It is further admitted by Shad that he did execute the bill of sale, and that he did so in·connection with the loan made to him by·Livingston; and in his cross-examination as a witness he says that he would not have made the bill of sale to Livingston if he had not owed him·$2,500, and that said bill of sale was made for the purpose of making said loan secure to Mr. Livingston in case of fire. Being further pressed on cross-examination, Shad admitted that if the chattel mortgage that he gave had been sufficient to perfectly secure Livingston against all contingencies, then he would not have made the bill of sale. Mr. Shad in his answer and in his direct examination asserts, however, that this bill of sale was given merely as a nominal thing, and only for the purpose of enabling Livingston to effect insurance of the property pledged as se curity for the loan, and that he never *delivered* the bill of sale to Livingston, but that when he executed it, it was expressly agreed that it was not to be delivered to Livingston. In this version of the matter Mr. Shad stands alone unsupported by any other evidence of

fact or circumstance, and his readiness, in his answer
to the bill, to defeat, with legal technicalities imparted
to him by counsel, the collection of that which he ad-
mits to have been a *bona fide* loan of money to him
by Livingston for the purpose of purchasing the iden-
tical property in controversy, does not impress us as
being calculated to augment the credibility of his ver-
sion of the affair. On the other hand, it is admitted
by all parties that on the 6th day of December, 1886,
when the loan was made and the notes therefor were
given, Shad did execute a chattel mortgage, in form,
on the same property covered by the bill of sale, *which*
*property was the security upon the faith of which*
*Livingston was parting with his money;* and it is
further admitted that *at the time* it was agreed that
Shad should insure the property against loss by fire
for Livingston's benefit. Contrary to Shad's version,
Livingston and W. B. Owen both positively affirm
that when Livingston and Shad together went to
Owen's office *to consummate the agreement as to the*
*insurance*, which insurance was also designed as an
element of the *security* for the loan, it was there found
through Mr. Owen, as insurance agent, that insurance
companies would not insure personal property covered
by chattel mortgages, and that on learning this, Shad
then and there, on December 8th, executed the bill of
sale, absolute on its face, as a substitute for the mort-
gage executed on the 6th and *acknowledged the same*
*for record* before W. B. Owen, as a Notary Public,
and delivered it to Owen, as *Livingston's attorney,*

and Owen immediately had it recorded.    Under this
proof in the light of all the attendant circumstances
we, like the court below are clearly convinced that the
bill of sale was executed and delivered by Shad to
Livingston for the purpose of securing the indebted-
ness between them, and that, under our law, it had the
force and effect of a mortgage.

Some effort is made in the answer of Melton, the as-
signee of Shad, to set up as a defense that he had no
notice or knowledge of the existence of any mortgage
until after Shad's assignment to him.    This can not
avail anything because of the constructive notice to
him from the record of the bill of sale, and because a
voluntary assignee for the benefit of creditors takes
the property of the assignor *cum onere*, subject to all
equities to which it was liable in the hands of the as-
signor.    Campbell Printing Press & Manfg. Co. vs.
Walker, 22 Fla., 412, 1 South. Rep., 59; Einstein's
Sons vs. Shouse, 24 Fla., 490.   5 South. Rep., 380.

The decree of the court below is affirmed.