IDA BAKER PITTMAN, *et al.*, *Appellants,* v. W. H. MILTON,
AS SURVIVING PARTNER, ETC., *Appellee.*

Opinion Filed March 17, 1915.

1. When a replication is filed to an answer in equity, it puts in
    issue all the matters alleged in the bill of complaint that
    are not admitted by the answer, as well as those matters
    contained in the answer that are not responsive to the bill

of complaint. Matters set up in the answer that are not responsive to the bill, as new matters in opposition to or in avoidance of the allegations of the bill, must be proved by the defendant.

2. The averments in the answer of new matter not responsive to the bill that are not proven, cannot avail the defendant.

3. Affirmative averments in an answer that are not required by the bill of complaint, that do not grow out of any transaction of facts alleged in the bill or admitted in the answer, and that are not inseparably connected therewith, constitute new matter not responsive to the bill of complaint and if not proved, cannot avail the defendant.

4. Where the answer in an equity cause sets up affirmative averments of new matter not stated or inquired of, and not inseparably connected with matter stated or inquired of, in the bill of complaint, and such new matter is in opposition to, or in avoidance of, the plaintiff's demand or claim of right, and a general replication is filed, such affirmative averments are of no avail to the defendant unless proven by independent testimony.

5. In order that the sworn answer of a respondent may have the effect of being evidence in his favor, and conclusive unless overcome by the testimony of two witnesses, or of one witness corroborated by other circumstances which add greater weight than the answer, it must be directly and positively responsive to the material allegations of the bill.

6. Averments of a sworn answer must be as to matters of personal knowledge and must be directly and positively responsive to the material allegations of the bill in order to be conclusive evidence in favor of the parties answering unless overcome by the testimony of two witnesses or by the testimony of one witness and corroborating circumstances.

7. An answer in equity contradicted in a material point loses all weight as evidence, and serves the purpose only of a pleading in the cause.

20—Vol. 69.

8. An instrument must be deemed and held to be a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money, and the mere absence of terms of defeasance can not determine whether it is a mortgage or not.

9. Under the statutes of this State a mortgagee acquires only a specific lien on the property of another described in the mortgage and an "instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money," may upon its face convey title to property, subject to the provisions of the statute that it "shall be deemed and held a mortgage," if by extrinsic facts the statute is shown to apply.

10. If an instrument is a mortgage when executed its character does not afterwards change, for once a mortgage always a mortgage is a mixim of the law.

11. Where an agreement that a conveyance is not a mortgage but an absolute conveyance is wholly inconsistent with the facts of the case, such agreement does not make absolute a conveyance that under the statute may be shown to have been executed "for the purpose and with the intention of securing the payment of money."

12. If there be a reasonable doubt as to whether a transfer of property is a mortgage or an absolute assignment, the doubt should be resolved in favor of its being a mortgage, when there was an existing debt.

13. Where a life insurance policy is transferred by a debtor to creditors, when a debt is due to them, and premiums paid on the policy are charged to the debtor, and it is not clearly shown that the transfer was in fact made absolute, it will be deemed to have been made for the purpose of securing the debt.

Appeal from Circuit Court for Jackson County; J. Emmett Wolfe, Judge.

Decree reversed.

*E. C. Maxwell* and *C. F. Prince,* for Appellants;

*W. B. Farley,* for Appellee.

WHITFIELD, J.—Appellants brought suit against the appellee for an accounting for the proceeds of a life insurance policy issued on the life of N. A. Baker and assigned to secure an indebtedness to W. J. Daniel & Co., a partnership, of which firm the appellee is the surviving partner. There was a decree for the defendant, and the complainants appealed.

The bill of complaint alleges in effect that in 1895 N. A. Baker procured the life insurance policy for $10,000.00 upon his life, made payable to his wife if living at his death, and if not living, to the executors, administrators and assigns of the insured; that N. A. Baker who was engaged in business in Jackson Co., Fla., became indebted to the said firm of W. J. Daniel & Co., composed of W. J. Daniel and the defendant W. H. Milton, and in order to secure the said indebtedness transferred and assigned to the said W. J. Daniel & Co. the said policy of insurance, executing to them an assignment or transfer thereof; that the said assignment and transfer while in form an absolute assignment was intended and understood by all of the parties thereto as being merely a pledge or mortgage of the said policy as a security for the indebtedness of the said Baker, and was accepted and received by the said W. J. Daniel & Co., as such security; that the wife

of N. A. Baker died May, 1901, and N. A. Baker died in July, 1906; that for sometime after the pledge or assignment of said insurance policy as aforesaid to the said W. J. Daniel & Co. the said N. A. Baker continued to pay the insurance premiums thereupon to the said Insurance Society, but that before his death he became financially embarrassed and unable to do so, and thereafter the said premiums were paid by the said W. J. Daniel & Co.; that after the death of said N. A. Baker as aforesaid the said defendant W. H. Milton to-wit, in the year 1906, under the policy and transfer thereof collected from the said Equitable Assurance Society of New York the amount of said insurance policy, to-wit, the sum of $10,000.00; that the said W. H. Milton was authorized and entitled as your orators are informed and believe from the said sum so collected to satisfy and discharge the indebtedness with interest thereon of the said N. A. Baker to said firm of W. J. Daniel & Co. for advances as aforesaid to secure which said policy was transferred as aforesaid, and also to reimburse said firm for the insurance premium or premiums which they had paid upon said policy while pledged to them as aforesaid with interest thereon; that the proceeds of the policy are largely in excess of the indebtedness of N. A. Baker to W. J. Daniel & Co.; that the defendant denies that the complainants or any of them are entitled to any part of said sum of $10,000 collected by the defendant as aforesaid and claims that the said policy and its proceeds are the absolute property of the said W. J. Daniel & Co., and of himself as surviving partner of said firm in absolute ownership, and that he is entitled to the whole of said proceeds. The prayer is for a decree adjudging the assignment of the policy to W. J. Daniel & Co. was not an absolute transfer, but was a mortgage or

pledge thereof for the purpose of securing the said indebt-
edness of the said N. A. Baker to said firm, and that prop-
er accounting and distribution be made, and for general
relief. The defendant by answer under oath, the oath not
being waived, denies the allegations of the bill "in setting
up a claim against the defendant in the manner and form
as therein alleged and set forth, except in the particulars
hereinafter expressly admitted in the narration of the
true facts;" and avers that during the year A. D. 1895,
and for several years theretofore and until after the con-
clusion of all active transactions with said N. A. Baker in
said bill named, the said firm of W. J. Daniel & Co. was
actively engaged in the banking business in Marianna,
Florida, and during such time the said N. A. Baker did
business with them depositing money with said firm and
drawing checks against such deposits and from time to
time borrowing large amounts of money, and from time
to time being indebted largely more than the amount of
his deposits or credits, as well as at times having con-
siderable money to his credit. The said N. A. Baker was
a turpentine operator engaged in a business which re-
quired considerable money at times, and requiring ad-
vances to be made him. That said firm of W. J. Daniel &
Co. was a private bank, and were as liberal towards said
N. A. Baker as seemed reasonable, and from time to time
took security upon the property of said Baker and pro-
tected themselves with security such as he could give on
his property and the output of his turpentine farm. But
at times the security was not of the best, but depended
upon the life and business ability and acumen of said N.
A. Baker to work out a profit by manufacturing spirits
of turpentine and other naval stores, so that while the
security given by said N. A. Baker to said firm was such

as is ordinarily taken by naval stores factors, yet, in the newness of the naval stores business in this section of the country then, and the fact that said firm of W. J. Daniel & Co. was not in the naval stores business at all nor conversant therewith, such firm was interested in the life of said N. A. Baker as really dependent upon his living for their protection, though they had taken the usual mortgage security from him, and relied thereupon. Such being the case, and the said firm of W. J. Daniel & Co. having all insurable interest in the life of said N. A. Baker, the said W. J. Daniel & Co. desired to take out a policy of insurance upon the life of said N. A. Baker, and for such purpose caused the said N. A. Baker to apply for a policy of life insurance upon his life, which was done and the Equitable Life Assurance Society of the United States issued Policy No. 746598 dated the eighth day of July, 1895, whereby the said insurance company "In consideration of the written and printed application for this policy which is hereby made a part of this contract, and the payment in advance of Two Hundred and seven dollars and twenty cents and of the semi-annual payment of Two Hundred and Seven Dollars and twenty cents, to be made thereafter at the office of the Society in the City of New York, on or before the sixth day of January and July in every year, (provided that when premiums for twenty full years shall have been duly paid to said Society, no further premiums will be required) ; does promise to pay to Kate E. Baker if living, if not then to her husband Neill A. Baker, his executors, administrators or assigns, at the office of the Society in the City of New York, Ten Thousand Dollars, upon satisfactory proofs of the death of said Neill A. Baker of Cypress, in the County of Jackson, State of Florida." And the said firm of W. J. Daniel & Co. did pay the

said $207.20 in advance to said Insurance Company upon which payment the said policy of insurance was issued, and did thereafter pay each semi-annual installment of premium upon said policy as it became due, and did keep said policy in force and effect, and from the beginning it was the understanding between the parties said W. J. Daniel & Co. and said N. A. Baker (whose full name was Neill A. Baker, and who was the "life" in said policy) that the policy was the property of said W. J. Daniel & Co.; but it was put in the said form to meet the wishes of the wife of said Neill A. Baker who was reluctant at first to allow the insurance to be taken out. That the form of the policy necessitated an assignment thereof to carry out the intentions of said N. A. Baker and his wife Katie E. Baker and the firm of W. J. Daniel & Co. and put the absolute ownership of said policy into said firm of W. J. Daniel & Co., and they therefore procured from the said insurance company its recognized form for an absolute assignment of the policy, and this caused some little delay in adjusting the matter, but on the sixth day of December, 1895, the said absolute assignment was made and executed by said N. A. Baker and his wife K. E. Baker to the said firm of W. J. Daniel & Co., a copy of which absolute assignment is hereto attached as "Exhibit A" and made a part hereof. And said assignment was sent the said insurance company and they made the necessary entries upon their record of said policy to show the absolute ownership in said W. J. Daniel & Co. and consented to said assignment of said policy, and ever afterwards accepted the money of said W. J. Daniel & Co. in payment of the premiums thereupon, and sent the receipts therefor to said W. J. Daniel & Co. And the said N. A. Baker and his said wife delivered said policy to said W. J. Daniel & Co. immediately upon its issuance, and never after-

wards made any claim thereto, so far as this defendant is informed and believes. That the said firm of W. J. Daniel & Co. did pay to said insurance company as premiums on said policy $207.20 on July 8th, 1895, and a like sum on January 6th, 1896, and July 6th, 1896, and a like sum on January 6th and July 6th of each succeeding year up to and including July 6th, 1906, which last amount was receipted for by the Agent of the Company on July 4th, 1906, and later the company's regular receipt was forwarded to defendant therefor. These payments of premium were made by said firm of W. J. Daniel & Co. which firm made entries on its books to show such paymenrs made at first, and later, after the first few payments, ceased to keep a regular account of same, but preserved the company's receipts for such payments along with said policy, which policy as aforesaid had been absolutely as signed and delivered to said W. J. Daniel & Co. by said N. A. Baker and his wife Katie E. Baker. That during the year A. D. 1898 the said N. A. Baker made an arrangement with one A. M. Moses doing business as A. M. Moses & Co., naval stores factor, to handle the output of his turpentine business and to advance him in the future. and such arrangement was made that about the last of December, 1898, the said A. M. Moses & Co. advanced certain money to pay up the account of said N. A. Baker with said W. J. Daniel & Co. and there was a settlement and adjustment of the account of said N. A. Baker with said W. J. Daniel & Co., except that the items of premiums paid on said insurance policy were stricken from said account, and were not paid by said N. A. Baker nor by said A. M. Moses & Co.; but the account was settled without such payments, upon the absolute refusal of A. M. Moses and Company to advance money for such purposes after

all parties conceded that the assignment of. the policy was absolute and that all the premiums had been paid by said W. J. Daniel & Co., and said N. A. Baker then and there told said W. J. Daniel & Co. that the said policy of insurance was the absolute property of said firm of W. J. Daniel & Co. and it was agreed that any balance of the account then appearing and also all claims for premiums on said policy were to be no longer charged against said N. A. Baker, and there was a full settlement effected between said N. A. Baker and W. J. Daniel & Co. There was a balance due upon some written obligations of said N. A. Baker then past due (in addition to the account) of about $1800.00 and a balance appearing on the account, after the payments by check of A. M. Moses & Co. of $89.95, and all of this was agreed to be cancelled and paid off, and Baker went clear and W. J. Daniel & Co. took the policy as theirs absolutely. In making this compromise settlement and agreement the account appearing on the books against N. A. Baker were recast, the charges of premium thereon appearing (being improperly thereon) were ignored or stricken, and the account was not reposted nor a further balance struck; but the whole matter was compromised and ended, except one item of borrowed money on the 3rd day of January, 1899, which was paid by said N. A. Baker on January 10th, 1899, by check and since then there has been no transaction between said N. A. Baker and said W. J. Daniel & Co. That in the year 1901, or thereabout, the said N. A. Baker became bankrupt and filed his petition in voluntary bankruptcy and was discharged in due course by the Court of Bankruptcy, the United States District Court for the Northern District of Florida. That said N. A. Baker did not schedule any indebtedness from himself to said W. J. Daniel & Co.. nor

did he schedule said policy of insurance as. an asset; but confirmed the settlement he had made as above set forth, and said W. J. Daniel & Co. made no claim against the bankrupt estate of said N. A. Baker, but confirmed the settlement they had made with him, and all parties treated said insurance policy as the absolute property of said W. J. Daniel & Co.

4. That the whole transaction concerning the assignment of said policy was fair and open and no advantage was taken of said Baker nor of his said wife, who died prior to the death of said N. A. Baker, and as this defendant believes before the full settlement made with said N. A. Baker. But in order to make clear to the court that the settlement was to the great advantage of said N. A. Baker and his estate, this defendant wishes to call attention to the value of said Policy of Insurance at the time the settlement was made with said Baker. The figures are as follows:

Among the options in said policy contained were:

"If after having been in force for three years, it should lapse in consequence of non-payment of any premium, it will have the surrender value in paid up insurance, for as many twentieths of the original policy as complete annual premiums shall have been paid, provided this policy be surrendered within six months after the date of such lapse. It gives to Neill A. Baker a choice of six methods of settlement upon the completion of the tontine period, on the sixth day of July nineteen hundred and fifteen (July 6, 1915), namely,

1.   The continuance of the Policy, and the withdrawal of the accumulated surplus,

Either in      1.   cash,

2.   paid up insurance,

3.   an annuity.

Or II.   The surrender of the policy for its full value, consisting of the entire reserve amounting to $5905, Fifty-nine hundred and five dollars together with the surplus then apportioned by the Society, either in

1.   cash,

2.   paid up insurance.

3.   a life annuity."

That is Neill A. Baker had nothing until 1915, if he lived, unless he surrendered the policy as lapsed, and took paid up insurance (then at time of settlement with W. J. Daniel & Co., 3-20 of the policy, or $1500.00 payable at his death). Or unless he sold the policy for the cash surrender value which was approximately one half of the premiums then paid in, in this instance some six hundred or seven hundred dollars ($700.00), the exact figures, the defendant can supply at the hearing, but is not now exactly advised. But defendant avers that the cash surrender value of the policy was at the time of the compromise settlement hereinbefore set forth less than half of the amount relinquished and paid said Baker in said compromise settlement. Defendant further avers that the amount of paid up insurance which could have been had upon said policy of insurance was much less than the claim of de-

fendant's firm released to said Baker; and that if paid up
insurance had been taken, the firm of W. J. Daniel & Co.
would have lost several hundred dollars as well as inter-
est; In other words said N. A. Baker by said compromise,
not only got a settlement, but actually received much more
than the value of his said policy even had it been his orig-
inally and the premiums paid by him. But all the prem-
iums were from the very inception of the policy paid by
said W. J. Daniel & Co., and said N. A. Baker never paid
one cent on said policy.

That said firm of W. J. Daniel & Co. having made the
settlement with said N. A. Baker, and having settled for-
ever the question of the ownership of said policy of in-
surance, agreed among themselves that rather than take
a cash surrender value of something like $700.00, or a
paid up policy for $1500.00, in view of the fact that it
was their policy from the beginning, they would keep up
the policy and pay the premiums, and this was done by
them, and the policy kept in force, the last premium being
paid on the 4th day of July 1906—about three days be-
fore the death of said N. A. Baker, who died on or about
the 7th day of July, A. D. 1906. That said W. J. Daniel
died on the 23rd day of January, A. D. 1906, leaving this
defendant as his surviving partner, and also as an execu-
tor of his last will and testament. That after the death of
said N. A. Baker this defendant as surviving partner of
said firm of W. J. Daniel & Co., composed of said W. J.
Daniel, deceased, and himself, did make proof of loss and
ownership of the policy, and did collect the same less the
semi-annual premium which would have been due to com-
plete the premium for the year beginning July 6th, 1906,
and did receive from the insurance company as the pro-
ceeds of said policy the sum of $9792.80 on the 22nd day

of August, 1906, or there about. That the premiums paid
out by said firm of W. J. Daniel & Co. from July 6th,
1895, to July 6th, 1906, both inclusive, were twenty-three
semi-annual premiums of Two hundred and seven and
20-100 ($207.20) Dollars each, paid as they became due.
That at the time of the settlement with N. A. Baker above
set forth, and among the claims released upon the dis-
tinct understanding that the assignment of the policy was
absolute was an indebtedness of a little more than
$1800.00, which was drawing interest at the rate of ten
per cent per annum, as by agreement was all the indebted-
ness of said N. A. Baker. That if the assignment is not
held to be absolute, defendant should have the benefit of
this amount with ten per cent. interest thereon, (and the
premiums should also bear interest at the rate of ten per
cent.) since the same was cancelled and surrendered upon
the distinct understanding that the policy was and al-
ways had been the property of said W. J. Daniel & Co.,
and in such event, the whole settlement should be recast
and figured upon the actual true balance which the court
may find, if this answer is not maintained by the law. Upon
such recasting and figuring this defendant respectfully
submits that the whole face of the policy received by him
in August, 1906, would be consumed. That the compro-
mise settlement with Baker was made because he was un-
able to pay in full, as well as the reasons hereinbefore
given. N. A. Baker was at that time heavily involved, and
never regained his commercial standing. And this de-
fendant avers that the theory of complainants said bill
that the said policy was a mortgage is not correct; but
that the assignment was absolute, and in reality the policy
was taken out by the firm of W. J. Daniel & Co. as their
own from the beginning. That said policy was never un-
derstood by the parties to be a pledge or mortgage as is

alleged in said bill, as security for the indebtedness of said N. A. Baker, nor was it accepted and received by said W. J. Daniel & Co. as such security.

5. That after the collection of the policy and even prior thereto some of the complainants made inquiry as to the status of the matter, and the defendant submitted all the facts in the case to an attorney and obtained an opinion of such attorney as to what was the legal and proper status of the matter, and the said attorney gave as his opinion that the said policy and its proceeds was the property of said W. J. Daniel & Co. and that the heirs of said N. A. Baker had no interest therein or right thereto, and thereupon the inquiry of the complainant, or complainants who had written was answered stating that such opinion had been given and was relied upon by this defendant and the executors of the estate of said W. J. Daniel. That defendant has never accounted, nor attempted to account to the heirs of Baker, not from any unwillingness to disclose the true status, but because he knew the assignment to be absolute and had the advice of counsel that in law the policy was not a pledge nor a mortgage, and that neither the estate nor the heirs of said N. A. Baker had any right, title, or interest therein. That after the institution of suit by complainant, defendant has sought to maintain his rights and to arrive at such an issue as would enable the court to correctly decide the cause. And defendant avers upon the facts hereinbefore set forth that complainants have no right to an accounting from this defendant, nor any right to a discovery nor any cause of action against defendant in any capacity.

There are other averments in the answer that need not be stated here, though all of them have been carefully considered.

Replication was filed and testimony taken. In the final decree dismissing the bill of complaint, the court adjudged "that the allegations in the answer of the defendant are evidence * * * not overcome * * * by the testimony in the case, and that the equities are therefore with the defendant."

When a replication is filed to an answer in equity, it puts in issue all the matters alleged in the bill of complaint that are not admitted by the answer, as well as those matters contained in the answer that are not responsive to the bill of complaint. Matters set up in answer that are not responsive to the bill, as new matters in opposition to or in avoidance of the allegations of the bill, must be proved by the defendant.

The averments in the answer of new matter not responsive to the bill that are not proven, cannot avail the defendant.

Affirmative averments in an answer that are not required by the bill of complaint, that do not grow out of any transaction of facts alleged in the bill or admitted in the answer, and that are not inseparably connected therewith, constitute new matter not responsive to the bill of complaint and if not proved, cannot avail the defendant.

Where the answer in an equity cause sets up affirmative averments of new matter not stated or enquired of, and not inseparably connected with matter stated or equired of, in the bill of complaint, and such new matter is in opposition to, or in avoidance of, the plaintiff's demand or claim of right, and a general replication is filed, such affirmative averments are of no avail to the defendant unless proven by independent testimony. Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003.

In order that the sworn answer of a respondent may have the effect of being evidence in his favor, and conclusive unless overcome by the testimony of two witnesses, or of one witness corroborated by other circumstances which add greater weight than the answer, it must be directly and positively responsive to the material allegations of the bill. Kellogg v. Singer Mfg. Co., 35 Fla. 99, 17 South. Rep. 68.

Averments of a sworn answer must be as to matters of personal knowledge and must be directly and positively responsive to material allegations of the bill in order to be conclusive evidence in favor of the parties answering unless overcome by the testimony of two witnesses or by the testimony of one witness and corroborating circumstances. Mayo v. Hughes, 51 Fla. 495, 40 South. Rep. 499; Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 425, 34 South. Rep. 255.

An answer in equity contradicted in a material point loses all weight as evidence, and serves the purpose only of a pleading in the cause. Nobles v. L'Engle, 58 Fla. 480, 51 South. Rep. 405.

An instrument must be deemed and held to be a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money, and the mere absence of terms of defeasance can not determine whether it is a mortgage or not.

Under the statutes of this State a mortgagee acquires only a specific lien on the property of another described in the mortgage, and an "instrument of writing convey-

ing or selling property, either real or personal, for the purpose or with the intention of securing the payment of money," may upon its face convey title to property, subject to the provisions of the statute that it "shall be deemed and held a mortgage," if by extrinsic facts the statute is shown to apply. Gen Stat. Chap. 2494.

If an instrument is a mortgage when executed its character does not afterwards change, for once a mortgage always a mortgage is a maxim of the law.

Where an agreement that a conveyance is not a mortgage but an absolute conveyance is wholly inconsistent with the facts of the case, such agreement does not make absolute a conveyance that under the satute may be shown to have been executed "for the purpose and with the intention of securing the payment of money." Connor v. Connor, 59 Fla. 467, 52 South. Rep. 727.

The bill alleges that "N. A. Baker became indebted to W. J. Daniel & Co., and in order to secure the said indebtedness transferred and assigned to the said W. J. Daniel & Co. the policy of insurance issued in 1895," executing to them an assignment or transfer thereof; that the said assignment and transfer while in form an absolute assignment, was intended and understood by all of the parties thereto as being merely a pledge or mortgage of the said policy as a security for the indebtedness of the said Baker  *  *  *  and was accepted and received by the said W. J. Daniel & Co. as such security." The answer denies the allegations of the bill "setting up a claim against the defendant in the manner and form as therein alleged and set forth except in the particulars hereinafter admitted in the narration of the true facts." The answer avers that in a settlement between N. A. Baker

and W. J. Daniels & Co., "the items of premiums paid on said insurance policy * * * were not paid by N. A. Baker * * * but the account was settled without such payments * * * after all parties conceded that the assignment of the policy was absolute and that all the premiums had been paid by said W. J. Daniel & Co., and said N. A. Baker then and there told said W. J. Daniel & Co. that the said policy of insurance was the absolute property of said firm of W. J. Daniel & Co., and it was agreed that any balance of the account then appearing, and also all claims for premiums on said policy were to be no longer charged against said N. A. Baker, and there was a full settlement effected between said N. A. Baker and said W. J. Daniel & Co.;" and that after the settlement of the account between Baker and W. J. Daniel & Co. there was a balance due "of about $1,800.00 and a balance appearing on the account, after the payments by check of A. M. Moses & Co. of $89.95, and all this was agreed to be cancelled and paid off, and Baker went clear, and W. J. Daniel & Co. took the policy as theirs absolutely."

If the above stated portion of the answer may be regarded as being a direct and positive averment that is responsive to the material allegation that N. A. Baker made a written assignment of the policy prior to the time referred to by the answer, the averments of the answer as to a verbal transfer of the policy subsequent to its written assignment as a pledge or mortgage to secure an existing indebtedness, is contradicted in essential particulars by the evidence eminating from the defendant as well as from the complainant. Besides this the answer avers facts that show the original transfer of the policy was to secure a debt which under the statute made it a

mortgage; and this character of the transfer continues until it is clearly shown that there was a valid and binding transfer or surrender of all the rights of the insured under the policy. In addition to this, if there be a doubt as to whether the transfer was a mortgage or an absolute assignment the doubt should be resolved in favor of its being a mortgage when there was an existing debt, so that the creditor may be paid in full, and the remainder if any shall go to the insured or his representatives. See Hull v. Burr, 58 Fla. 432.

The testimony clearly overcomes any probative force to which the answer may be entitled, particularly in view of the original relation shown in connection with the reciprocal obligation to pay the debt on the one side and on the other side to account for the remainder, if any is left of the security after the debt is fully paid.

The equities appear to be with the complainants, and the decree is accordingly reversed, and the cause is remanded with directions to proceed in accordance with the equities as herein adjudged.

It is so ordered.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND ELLIS, JJ., concur.