CARY & COMPANY, A CORPORATION, *Plaintiff in Error,* v.
J. WHITING HYER, *Defendant in Error.*

Division A.

Opinion Filed February 24, 1926.

*Carter & Yonge,* for Plaintiff in Error;

*William Fisher* for Defendant in Error.

STRUM, J.—This is an action in replevin, involving possession of an automobile. The declaration is in the usual form, and to it the defendant interposed a plea of "not guilty," and a further plea that the plaintiff was not the owner, nor entitled to the possession of the automobile.

The automobile in question was originally purchased in January, 1920, by T. H. Lacey, from a dealer in automobiles, under what is conceded to be a conditional sales contract, by the terms of which title remained in the dealer until payment of the purchase price. In November, 1920,

the sum of $392.00 remained unpaid on the purchase price, a portion of which was past due, and the dealer was pressing Lacey for payment. Upon Lacey's request, Cary & Company, plaintiffs below and plaintiff in error here, provided the money with which the entire indebtedness to the dealer was paid off. The transaction between Lacey and Cary & Company, through which the requisite funds were secured by Lacey, is the source of the major problem presented for determination upon this writ of error, the question being whether that transaction was in effect a loan from Carey & Company to Lacey, whereby Cary & Company acquired only a lien on the automobile, or whether there was an absolute sale of the automobile from Lacey to Cary & Company and a conditional re-sale thereof from Cary & Company back to Lacey, by which title to the automobile was, respectively, acquired and retained by Cary & Company.

The nature of the transaction, as well as the purpose and intention of the parties to it, are thus described by Mr. S. H. Pinney, who represented Cary & Company in the matter: "Mr. Lacey came in and asked if I could lend him some money on his automobile  *  *  *  . He showed me the contract (the contract with the dealer from whom Lacey originally purchased the automobile), and said he had a good car and had some notes due at the bank and I believe he said he was being pressed for the notes and would like to borrow some money. I told him I was sorry I could not accommodate him. Finally  *  *  *  I said, 'There is only one way I can help you out of trouble about your car  *.  *  *  . I will give you $445.00 for the car and buy it from you. It shall be my car and you will have to make me what I construe a bill of sale, you will have to sell me your car for this amount, but if you want to buy it back at a certain time I will give you the option to buy it

back." He (Lacey) said, 'If you will give me the opportunity to buy back the car, alright.' '' Further testifying at the trial, Pinney said: ''Lacey first came to me to borrow money. I didn't know him. Had never seen him before. He said he wanted to borrow money on the automobile, and I said 'We don't lend money on them except to these dealers, we discount notes taken by them for automobiles, but we don't lend money on automobiles.' Lacey was not a dealer at that time * * * . I told him no we wouldn't make him a loan. I told him there was only one way, that is for me to buy the car for $445.00. I would give him that for it and give him an option to buy it in a certain time. I got out the form of contract and said I would buy the car under this agreement, that he might retain possession of it and if he paid me up by the time specified, then it was his car. The form of contract introduced in evidence was the form agreed upon. We agreed upon that before he signed it. I had showed him that form before he signed it.''

There was no specific conveyance of the automobile by Lacey to Cary & Company, but at the conclusion of the negotiations related by Mr. Pinney, an instrument in writing, purporting to be a conditional sales contract, was executed between Cary & Company, Inc., as vendor, and T. H. Lacey, as vendee, by the terms of which Cary & Company agreed to sell and Lacey agreed to buy the automobile for the sum of $445.00, therein designated as the purchase price, that sum being further evidenced by a series of promissory notes contemporaneously executed by Lacey, as maker, to the order of Cary & Company, as payee, payable at monthly intervals. The instrument referred to appears to be in the usual form of conditional sales contracts for automobiles, and amongst other things requires Lacey to procure and maintain at his own cost insurance on the

automobile in the sum of not less than $600.00. Acting for Cary & Company, Pinney then and thereafter disbursed to the order of Lacey the sum of $392.00 which was used to pay off and discharge the remainder of the *original* purchase price of the car, and the further sum of $8.00 to pay the premium upon the required insurance. Explaining the application of the remaining $45.00, Mr. Pinney further testified: "The $45.00 was—I wasn't taking up the week's time with Mr. Lacey for nothing, and at the same time I think the car at $445.00 was cheap. I thought it was worth $700.00. Q. $45.00—was that for brokerage? A. $45.00 was what I would make for discussing the matter, drawing up the papers and attending to the details." There is no clear evidence of a delivery of the automobile by Lacey to Cary & Company at the time of the consummation of their transaction, but on the other hand, the evidence strongly indicates that possession remained at all times with Lacey.

Mr. R. M. Cary, President of Cary & Company, testified concerning the transaction: "Cary & Company are in the coal and building supplies business. Sometimes we lend money. Mr. Pinney was in our office with the Pensacola Rental Insurance Agency and he conducted that transaction. He used to make transactions to get insurance, lend money on automobiles to get insurance. He was working for the Pensacola Rental & Insurance Agency, loaning Cary & Company's money to Lacy. That is what happened in this transaction, I don't say he loaned money in this transaction, he bought the notes of T. H .Lacey. Pinney gave Lacey the money, that was my understanding, that he was buying the automobile.

Subsequent to the transaction above referred to, a creditor entered suit against Lacey and attached the automobile. The automobile was sold as the property of Lacey under the attachment process, and the defendant Hyer claims title and possession through that sale.

Lacey thereafter defaulted in his payments to Cary & Company, and the latter then sued out this writ of replevin for the automobile, relying upon the written instrument executed by itself and Lacey to show its title to, and Lacey's default in payment, which plaintiff asserted to be a breach of the terms of that instrument, to show its right to possession of the automobile. The defendant, Hyer, who is also defendant in error here, relied upon his title and right to possession derived through the attachment sale in the creditor's suit against Lacey, asserting that the transaction between Lacey and Cary & Company was in effect a loan, and that the written instrument executed between the parties last named, although in form of a contract of conditional sale, was in effect a chattel mortgage, and that Cary & Company therefore acquired only a lien upon the automobile.

Trial of the issues resulted in a verdict for the defendant, and no forthcoming bond having been given, the jury fixed the value of the automobile at $700.00. To the judgment entered upon that verdict Cary & Company took writ of error, contending that the verdict and judgment give to the contract between itself and Lacey an effect which is contrary to the intention of the parties in making it, and that to sustain the judgment would abrogate the right of these parties to make their own contract in the premises.

Within the limitations of public policy, and so long as inhibitions of law are not violated, parties *sui juris* may devise their own contracts and fully effectuate their purpose and intention. All contracts are made, however, subject to valid provisions of law pertaining to their execution, construction and effect.

Section 3836, Revised General Statutes, 1920, provides:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property

either real or personal, for the purpose or with the intention of securing the payment of money, whether such instruments be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, *shall* be deemed and held mortgages, and shall be subject to the same rules of foreclosure and the same regulations, restraints and forms as are prescribed in relation to mortgages.'' (Italics supplied).

The quoted section is comprehensive in scope and should be liberally construed. Hull v. Burr, 58 Fla. 432; 50 South. Rep. 754. Courts of equity have justly and wisely adopted the rule that in cases of doubt, the instrument will be held to be a mortgage, when there is an existing indebtedness between the parties. Pittman v. Milton, 69 Fla. 304, 68 South. Rep. 658; Hull v. Burr, *supra*.

A cardinal rule in the construction of *ambiguous* contracts is that the intention of the parties, when ascertained, will govern. See Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427, and compare Peoples Savings Bank v. Landstreet, 80 Fla. 853; 87 South. Rep. 227. Where parties intend a conditional sale rather than a mortgage, that intention will be given effect. Smith v. Hope, 47 Fla. 295, 35 South. Rep. 865. But in view of the provisions of our statute, even if it were not so independently thereof, neither artifice or form nor superficial declaration of intention will successfully obscure the true nature of the transaction. The Statute is designed to ensure effectuation of the *genuine* purpose and intention of the parties, by subordinating thereto the ostensible form in which the transaction is finally couched. That purpose and intention is therefore to be ascertained, not alone from the form of the instrument which evidences the transaction, but principally from the conduct of the parties and a fair consideration of the

entire transaction as disclosed by the underlying facts and circumstances. An important, if not a controlling guide in determining the intention of the parties is the purpose sought to be accomplished by them. Purpose is usually an unerring indication of intention. Under our statute, an attempted agreement between the parties that an instrument shall not operate as a mortgage but as an absolute conveyance, when wholly inconsistent with the surrounding facts and attendant circumstances, does not make absolute a conveyance given ''for the purpose or with the intention of securing the payment, of money,'' whatever may be the form of the conveyance, and the mere absence of defeasance does not alone determine the matter. Pittman v. Milton, 69 Fla. 304, 68 South. Rep. 658; Connor v. Connor, 59 Fla. 467; 52 South. Rep. 727; Willy-Gabbett Co. v. Williams, 53 Fla. 872, 42 South. Rep. 910; Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754. If, in view of all the circumstances, the transaction resolves itself into security for the payment of money, it is a mortgage. Elliott v. Connor, 63 Fla. 408, 58 South. Rep. 241; 11 C. J. 406.

A bill of sale absolute in itself may be shown by parol proof to have been given as security for a loan of money, and when it is so shown the instrument should be held to be a mortgage. Shad v. Livingston, 31 Fla. 89, 12 South. Rep. 646; Smith v. Hope, 51 Fla. 541; 41 South. Rep. 69; Smith v. Pfluger, 105 Mo. 783; 2 L. R. A. (N. S.) 783. The burden of proof, however, where the transaction is in form of a conditional sale, is upon the party asserting it to be a mortgage. Elliott v. Connor, 63 Fla. 408, 58 South. Rep. 241.

Some of the cases hereinabove cited are suits in equity concerning the conveyance of real property, but under the plain terms of our Statute the principles announced in

those cases are applicable alike to both real and personal property, and will obtain in courts of law as well as in courts of equity, the provisions of the Statute being directed to the purpose of the transaction involved and the intention of the parties to it, without reference to the tribunal in which it is tested. See 31 Cyc. 797, 790.

An examination of the evidence discloses in the transaction now under consideration the presence of several indicia of a loan, namely: (1) the transaction, in its inception, had for its purpose a loan, not a sale. On this point there is no dispute. See Devlin on Deeds, Sec. 1117; Cobb v. Day, 17 S. W. Rep. 323. (2) Lacey was in financial distress at the time of the transaction. See Russell v. Southard, 12 How. 139; 13 Law. Ed. 927; Bright v. Wagle, 3 Dana (Ky.) 252; 27 Cyc. 972, 1014; (3) the price for which Pinney claims to have bought the automobile for Cary & Company appears to have been grossly inadequate. Gross inadequacy of consideration is one of the tests which may be applied in determining whether a transaction was intended as a mortgage or as an absolute or conditional sale, especially when coupled with the financial embarrassment of the grantor. Hull v. Burr, 58 Fla. 432; 50 South. Rep. 754; Russell v. Southard, *supra;* Husheon v. Husheon, 12 Pac. Rep. 410; Campbell v. Dearborn, 109 Mass. 130; 12 Am. Rep. 671. When it is also accompanied by a contemporaneous agreement to re-convey the circumstance assumes even greater significance. (4) according to the plaintiff's own testimony, the transaction was a sale from Lacey to Cary & Company, accompanied by a contemporaneous contract to re-convey to Lacey, a circumstance which, standing alone, is by no means controlling in determining whether the transaction was a sale absolute or a mortgage, but when found with other supporting circumstances tends to indicate that it was the latter. Marshall v. Stewart, 17 Ohio 356; 20 Am.

& Eng. Ency. of Law, 2nd Ed. 947. Furthermore, if the contention of the plaintiff be correct, and the transaction between Cary & Company and Lacey was in reality an absolute sale of the automobile from Lacey to Carey & Company, and then in turn a conditional sale thereof from Cary & Company back to Lacey, we have an anomalous situation in which Lacey, being in possession and the potential owner of an automobile admittedly worth at least $700.00, sold the same to Cary & Company for $445.00, in order that he, Lacey, might contemporaneously buy it back for exactly the same sum, the apparent, if not the conceded, purpose of the entire transaction being to enable Lacey to procure the requisite sum of $392.00 with which to pay off the remainder of the original purchase price of the automobile, for a portion of which he was then being pressed for payment. Zimmerle v. Childers, 136 Pac. 349; Rairden v. Hedrick, 129 Pac. Rep. 498; and Murray v. Butte Monitor Co. 110 Pac. Rep. 497, are illuminating cases upon the general propositions here involved.

All the evidence was submitted to and considered by the jury under the charge of the court, with the result already stated, the correctness of the charges given being unassailed. The action of the trial judge refusing to direct a verdict for the plaintiff was without error. In addition to the evidentiary facts and circumstances already referred to as tending to support the verdict of the jury, the learned judge who presided at the trial in the Circuit Court and who possesses the advantage of having heard the witnesses and observed their demeanor while upon the stand, declined to disturb the verdict of the jury. We do not regard the verdict as contrary to the probative weight of the evidence, but on the other hand we do find in the record ample evidence upon which the verdict found by the jury might be lawfully predicated, and under the familiar rule in this

jurisdiction, the verdict will not be disturbed. Welles v. Bryant, 68 Fla. 113, 66 South. Rep. 562; Mathews v. Botsfield, 86 Fla. 40, 97 South. Rep. 282.

The verdict of the jury, after finding the defendant to be entitled to possession of the automobile, concluded as follows: "and we do find the value of the said automobile to be $700.00. So say we all.". There was no specific mention of interest.

When entering up the alternative money judgment, as provided by the Statute, the Clerk of the trial court, upon direction of the defendant, made the entry in the following manner: "And it is further considered by and is the judgment of this Court that the defendant, J. W. Hyer, do have and recover * * * the sum of $700.00, the value of the said automobile, together with the sum of $133.00, interest on the said value from the time of the institution of this suit, making a total of $833.00 * * * ." Plaintiff in error contends that the judgment so entered is excessive to the extent of the interest upon the value of the automobile included therein.

In Florida Trust & Banking Co. v. Consolidated Title Co., 86 Fla. 317, 98 South. Rep. 915, this court prescribed the measure of damages in replevin as follows: "We think the decided weight of authority supports the rule that, in replevin, damages will be the value of the property at the time of taking or unlawful detention, with interest from date of taking. Interest as here used is ordinarily the interest on the value, but conditions may arise in which interest would be measured in use value, or in other terms." Although interest upon the value of the property, from the date of the unlawful taking or detention to the date of the verdict, is allowable as an element of damages, like all other elements of damage such interest, or its equivalent if the latter be the measure appropriate to the property in con-

troversy, is to be ascertained by the jury and assessed in the verdict. The Clerk was therefore without authority to include in the alternative money judgment interest, from the date of the institution of the suit to the date of the judgment, upon the value of the automobile as found and fixed by the jury, and the judgment is to that extent erroneous.

The judgment is reversed, at the cost of defendant in error, and the cause remanded with directions to enter a proper judgment in accordance with the verdict of the jury, adjudging the defendant below to be entitled to possession of the property described in the verdict, and omitting the sum of $133.00 entered up as interest from the date of the commencement of the suit to the date of the judgment, so that the alternative money judgment against the plaintiff, as of the date of its rendition, to-wit: the 20th day of June, 1923, will be in amount of $700.00, and as so modified and entered, the judgment will stand affirmed. Geiger v. Henry, 44 Fla. 208, 32 South. Rep. 874; Sec. 2918 Rev. Gen. Stats. 1920.

It is so ordered.

BROWN, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the Opinion.